DANIEL J. KRAMER (*admitted pro hac vice*)
AUDRA J. SOLOWAY (*admitted pro hac vice*)
DANIEL S. SINNREICH (*admitted pro hac vice*)
KRISTINA A. BUNTING (*admitted pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email:        dkramer@paulweiss.com
Email:        asoloway@paulweiss.com
Email:        dsinnreich@paulweiss.com
Email:        kbunting@paulweiss.com

*Additional Counsel Listed on Signature Page*

*Attorneys for Snap Inc., Evan Spiegel, and Jeremi Gorman*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KELLIE BLACK, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>v.<br><br>SNAP INC., EVAN SPIEGEL, and JEREMI GORMAN,<br><br>                    Defendants. | No. 2:21-cv-08892-GW-RAOx<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>Date:    September 11, 2023<br>Time:    8:30 AM<br>Crtrm.:  9D<br>Assigned to Honorable George H. Wu |

# TABLE OF CONTENTS

                                                                                              Page

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     ARGUMENT ................................................................................................... 5

        A.      THE TAC FAILS TO RAISE A STRONG INFERENCE THAT
                GORMAN MADE THE APRIL 2021 STATEMENT WITH
                SCIENTER........................................................................................... 5

                1.      Plaintiff Does Not Dispute That Deliberate Recklessness
                        Requires Some Degree of Intentional Misconduct....................... 5

                2.      Plaintiff Fails to Plead Facts Showing Gorman Acted with
                        Deliberate Recklessness............................................................... 6

                        i.      Plaintiff Does Not Allege Any Contemporaneous
                                Facts Showing Gorman Knew Her Statement Was
                                False ................................................................................. 6

                        ii.     Plaintiff's Other Allegations—Either in Isolation or
                                Collectively—Do Not Give Rise to a Strong
                                Inference of Scienter ........................................................ 7

                        iii.    Plaintiff Cannot Plead a Strong Inference of
                                Deliberate Recklessness by Asserting Gorman Had
                                "No Basis" for the April 2021 Statement........................ 12

                3.      The Core Operations Inference Does Not Apply on These
                        Alleged Facts ............................................................................ 14

                4.      Weighing All the Inferences, the Non-Culpable One Is
                        More Compelling........................................................................ 17

        B.      PLAINTIFF FAILS TO PLEAD A SECTION 20(A) CONTROL
                PERSON CLAIM ............................................................................... 19

III.    CONCLUSION .............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Securities Litigation*,
   2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ......................................................20

*Azar* v. *Yelp*,
   2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) .....................................................15

*Berson* v. *Applied Signal Technology, Inc.*,
   527 F.3d 982 (9th Cir. 2008) ..........................................................................9, 16

*Boykin* v. *K12, Inc.*,
   54 F.4th 175 (4th Cir. 2022) .................................................................................18

*Brennan* v. *Zafgen, Inc.*,
   853 F.3d 606 (1st Cir. 2017) .................................................................................18

*Bruce* v. *Suntech Power Holdings Co.*,
   2013 WL 6843610 (N.D. Cal. Dec. 26, 2013) ......................................................20

*City of Dearborn Heights Act 345 Police & Fire Retirement System* v.
   *Align Technology, Inc.*,
   856 F.3d 605 (9th Cir. 2017) ...................................................................................7

*Curry* v. *Yelp Inc.*,
   875 F.3d 1219 (9th Cir. 2017) ..................................................................................6

*DSAM Global Value Fund* v. *Altris Software, Inc.*,
   288 F.3d 385 (9th Cir. 2002) ..................................................................................13

*In re Energy Recovery Inc. Securities Litigation*,
   2016 WL 324150 (N.D. Cal. Jan. 27, 2016) .........................................................20

*Evanston Police Pension Fund v. McKesson Corp.*,
   411 F. Supp. 3d 580 (N.D. Cal. 2019) .......................................................10, 13, 14

*In re Finisar Corp. Securities Litigation*,
   2017 WL 1549485 (N.D. Cal. May 1, 2017) .........................................................11

*Glazer Cap. Mgmt., L.P.* v. *Forescout Techs., Inc.*,
   63 F.4th 747 (9th Cir. 2023) ........................................................................1, 6, 13

ii

*Horizon Asset Mgmt. Inc.* v. *H & R Block, Inc.*,
    580 F.3d 755 (8th Cir. 2009) .................................................................................. 18

*Iron Workers Local 580 Joint Funds* v. *Nvidia Corp.*,
    2020 WL 1244936 (N.D. Cal. Mar. 16, 2020) .................................................. 11

*Jasin* v. *Vivus, Inc.*,
    2016 WL 1570164 (N.D. Cal. Apr. 19, 2016), *aff'd*, 721 F. App'x
    665 (9th Cir. 2018) ................................................................................................. 17

*In re LifeLock, Inc. Sec. Litig.*,
    690 F. App'x 947 (9th Cir. 2017) .......................................................................... 6

*Longo* v. *OSI Sys., Inc.*,
    2021 WL 1232678 (C.D. Cal. Mar. 31, 2021) .................................................. 10

*Metzler Inv. GMBH* v. *Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ............................................................................... 6

*Nguyen* v. *Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ........................................................................ 18, 20

*Nursing Home Pension Fund, Loc. 144* v. *Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004) ............................................................................ 17

*Patel* v. *Axesstel, Inc.*,
    2015 WL 631525 (S.D. Cal. Feb. 13, 2015) ............................................... 13, 14

*Plumbers & Steamfitters Local 60 Pension Trust* v. *Meta Platforms, Inc.*,
    No. 4:22-cv-01470 (N.D. Cal. July 21, 2023), Dkt No. 74 .............................. 15

*Prodanova* v. *H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021) ................................................................... 5, 6, 18

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ............................................................................ 10

*Reese* v. *Malone*,
    747 F.3d 557 (9th Cir. 2014) ................................................................. 10, 15, 16

*S. Ferry LP, No. 2* v. *Killinger*,
    542 F.3d 776 (9th Cir. 2008) .............................................................................. 14

iii

*Salameh* v. *Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) ..............................................................................20

*Shenwick* v. *Twitter*,
282 F. Supp. 3d 1115 (N.D. Cal. 2017) ................................................................15

*In re Twitter*,
506 F. Supp. 3d 867 (N.D. Cal. 2020), *aff'd*, 29 F.4th 611 (9th Cir.
2022) ......................................................................................................................15

*Weston* v. *DocuSign, Inc.*,
2023 WL 3000583 (N.D. Cal. Apr. 18, 2023) ......................................................10

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994) ................................................................................18

*In re Yahoo! Inc. S'holder Derivative Litig.*,
153 F. Supp. 3d 1107 (N.D. Cal. 2015) ................................................................16

*Yates* v. *Mun. Mortg. & Equity, LLC*,
744 F.3d 874 (4th Cir. 2014) ................................................................................18

*In re Zillow Grp., Inc. Sec. Litig.*,
2019 WL 1755293 (W.D. Wash. Apr. 19, 2019) ..................................................10

*Zucco Partners, LLC* v. *Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ................................21

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION
COMPLAINT (2:21-cv-8892-GW-RAOx)

## I.    PRELIMINARY STATEMENT[1]

This case has been narrowed substantially and even the limited claim Plaintiff continues to pursue is wholly defective.  Based on this Court's prior ruling, this lawsuit now involves a single statement that Jeremi Gorman made in April 2021: "[a]dvertisers that represent a majority of [Snap's] direct response advertising revenue have successfully implemented [SKAN] for their Snap campaigns."  (MTD-Ex. 2-18.)  And, in its Opposition brief, Plaintiff makes no attempt to argue that Gorman made the Statement with an *intent* to defraud investors, or that she had any *motive* to commit a fraud.  Instead, all that remains of Plaintiff's case is the argument that Gorman acted with "deliberate recklessness," a legal standard that the Ninth Circuit has long held requires Plaintiff to plead facts that "reflect[] some degree of intentional or conscious misconduct."  *Glazer Cap. Mgmt., L.P.* v. *Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023).  This argument fails because Plaintiff does not allege facts showing that, when Gorman made the Statement, any advertisers' implementation of SKAN was *un*successful, or that any advertisers were unhappy with SKAN, much less that Gorman deliberately and recklessly ignored any such facts.  Because the TAC does not plead facts that support a strong inference that Gorman engaged in any degree of intentional or conscious misconduct, it must be dismissed.  And dismissal should be with prejudice because this is Plaintiff's third failed attempt to state a claim.

Plaintiff's failure to plead that Gorman had either a motive or intent to defraud investors is significant.  Plaintiff's fraud claim is a tenuous one to begin with:  this

---

[1] MTD-Ex. _-_ refers to exhibits to the Declaration of Kristina A. Bunting, ECF 121-1 and corresponding page.  Ex. _-_ refers to exhibits to the Supplemental Declaration of Kristina A. Bunting, filed concurrently with this brief.  ¶_ refers to paragraphs of the Third Amended Complaint ("TAC"), ECF 120.  Ruling at _ refers to the Court's Tentative Ruling, which it adopted, Dkt. 115.  Br. _ refers to Defendants' Motion to Dismiss the TAC, ECF 121.  Opp. _ refers to Plaintiff's Corrected Opposition Brief, ECF 125.

1

Court has already dismissed it once, finding that Plaintiff had not pleaded scienter and that Gorman's Statement is susceptible of a non-fraudulent meaning.  Furthermore, any claim of fraud is undermined by the fact that Gorman warned shareholders that Apple's changes would "make it harder for" Snap and its advertisers, that there was "a lot of work to be done," that the changes were "causing some interruptions to demand" and it was still "too early to determine . . . the ultimate impact" on Snap's business.  (MTD-Exs. 10-146, 2-33, 5-55; *see also* Ruling at 20–21.)  As before, Plaintiff completely ignores all of Gorman's cautionary language, treating Gorman's Statement as if it were made in isolation.  But as this Court previously found, "Defendants disclosed the potential adverse impact of ATT on Snap's business" (Ruling at 21), which points to a "more plausible alternative explanation" (Ruling at 38) for Gorman's statement than the fraud argument Plaintiff is pushing.

Given this background, Plaintiff's continued failure to allege *any* facts showing that, as of April 2021, *any* of Snap's advertisers (much less those representing a majority of direct response advertising revenue) notified Snap that they had experienced *any* issues with SKAN, or that Apple's privacy changes had *any negative* impact on Snap's revenue, is damning.  Absent these allegations, Plaintiff simply cannot show that Gorman was so deliberately reckless that her Statement regarding SKAN implementation amounts to intentional or conscious misconduct.  Simply put, Plaintiff's securities fraud claim fails because the TAC does not allege that Gorman was deliberately reckless in disregarding any facts that existed in April 2021 that made her Statement regarding SKAN implementation false.

The allegations Plaintiff points to in its Opposition do not fill this gap and, accordingly, do not come close to carrying Plaintiff's burden of showing deliberate recklessness.  Significantly, Plaintiff does not allege that Gorman participated in any discussions that would lead her to believe her Statement was incorrect.  And the *only* document Plaintiff references in its Opposition is a spreadsheet that a CW allegedly viewed four months *after* Gorman made her Statement and purportedly showed that

2

a majority of Snap's direct response advertisers had not opted in to SKAN.  The spreadsheet falls short because it does not speak to the metric Gorman discussed, i.e., *revenue received* from direct response advertisers.  Plaintiff shrugs this off, claiming it is "a distinction without a difference" (Opp. 16), but the distinction between (a) a majority of advertisers and (b) the number of advertisers that represent a majority of revenue is, in fact, material, as the number of advertisers that represents a majority of revenue is almost always fewer, and often substantially fewer, than the number of advertisers that constitutes a majority of all advertisers.  Moreover, the spreadsheet cannot carry Plaintiff's heavy burden of pleading that Gorman was deliberately reckless when she made the April 2021 Statement because Plaintiff does not allege Gorman ever saw the spreadsheet, or that it even existed when Gorman made her Statement.  Plaintiff has no response to this.

Similarly, Plaintiff's other allegations fail to show Gorman was deliberately reckless in making her Statement because none of them relate to the experience that direct response advertisers representing a majority of direct response advertising revenue had with SKAN as of April 2021.  Plaintiff relies on various CWs but does not claim that any of them had information relating to revenue from direct response advertisers or that such CWs communicated any concerns any advertiser had about SKAN to Gorman.  Plaintiff points to the reaction that market analysts had to the Statement, but those reactions have no bearing on Gorman's state of mind, and they do not identify any information Gorman knew or ignored that contradicted her Statement.  And while Plaintiff makes conclusory allegations that Gorman held a senior position at Snap and had "intimate knowledge" of SKAN (Opp. 12), those general allegations do not take the place of particular allegations that Gorman knew, in April 2021, that advertisers representing a majority of Snap's direct response revenue had *not* successfully implemented SKAN.  Plaintiff is also incorrect when it argues that Gorman admitted in October 2021 that her April 2021 statement was false. (*See* Ruling at 35 n.31.)  What Gorman actually said in October 2021 was that, "*over*

3

*time*," the results of SKAN diverged from other measurement solutions. (MTD-Ex. 8-104 (emphasis added).) In short, none of these allegations give rise to a strong inference that Gorman deliberately and recklessly ignored information that contradicted her April 2021 Statement.

Unable to come forward with facts to support a strong inference of scienter, Plaintiff argues that Gorman had "no basis" for her Statement, relying on CW3 who speculates that Gorman "just made that up" because "[t]here [was] no way that Jeremi Gorman could have made a statement like that based on actual data." (Opp. 11.) There are numerous problems with this argument. Not only does CW3 not allege facts showing she was in a position to know Gorman's basis for her Statement, but she does not identify *any* "actual data" from April 2021 that purportedly undermines Gorman's Statement. (*Id.*) CW3's unsupported and conclusory opinion certainly does not constitute a fact that raises a strong inference that Gorman acted with deliberate recklessness. And, to the extent Plaintiff is arguing that Gorman must now come forward with facts defending her Statement, that turns the motion to dismiss pleading burden on its head, improperly shifting the burden to Defendant. Not surprisingly, Plaintiff has not identified a single court that has adopted this approach.

Plaintiff also attempts to satisfy its heavy pleading burden by invoking the core operations doctrine, but that argument fails for the same two reasons the Court rejected it last time. (Opp. 17–20.) *First*, Plaintiff has not identified any information that Gorman had access to in April 2021 that contradicted her Statement. Plaintiff never alleges that anyone told Gorman, before she made the Statement, that any advertiser's implementation of SKAN was *un*successful. As the Court explained in its prior ruling, "pointing to Defendants' statements does not suffice under the core operations theory. Instead, Plaintiff must produce 'specific admissions . . . of detailed involvement in the minutia of a company's operations,' and none of Defendants' alleged misstatements provide such admissions." (Ruling at 36–37 (ellipsis in original).) The TAC does not correct this defect. *Second*, Plaintiff once again fails

4

to plead facts showing that it was absurd for Gorman not to know her Statement was false. Cases involving the absurdity prong of the core operations inference all involve information about the speaker's own company, which must have been so obvious to the speaker that the failure to consider it is simply absurd. That is clearly not the situation here, where Gorman's Statement addressed the experience of third-party advertisers concerning a product offered by Apple, a third-party provider—at a time when Snap had not yet experienced any financial impact whatsoever. Plaintiff does not cite any case that invoked the core operations theory on facts remotely similar to these.

Plaintiff's Opposition confirms that it cannot plead a violation of the securities laws. For all these reasons, the TAC should be dismissed, this time without further leave to amend.

## II.    ARGUMENT

### A.    THE TAC FAILS TO RAISE A STRONG INFERENCE THAT GORMAN MADE THE APRIL 2021 STATEMENT WITH SCIENTER

#### 1.    Plaintiff Does Not Dispute That Deliberate Recklessness Requires Some Degree of Intentional Misconduct

To plead scienter, Plaintiff has the burden of alleging facts giving rise to a "strong inference" that Gorman made the April 2021 Statement "'with an intent to deceive, manipulate, or defraud,' or with deliberate recklessness." *Prodanova* v. *H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021). Here, Plaintiff does not contend that Gorman actually intended to deceive investors. And it has no argument for why Gorman was motivated to deceive investors. Plaintiff argues only that Gorman was "deliberate[ly] reckless[]." (Opp. 11–13.)

Under the federal securities laws, it is well established that for deliberate recklessness to satisfy the "'strong inference' of scienter" requirement, there must be "an *extreme* departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious*

5

that the actor must have been aware of it." *Prodanova*, 993 F.3d at 1106 (emphasis in original).   Plaintiff incorrectly suggests that deliberate recklessness requires something less than this exacting standard—only "reasonable grounds to believe material facts existed that were misstated or omitted" and failure to "obtain and disclose such facts." (Opp. 11.)  But that ignores the numerous Ninth Circuit cases that have made clear that, to meet this standard, unlike the general concept of recklessness in other areas of the law, Plaintiff "must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Prodanova*, 993 F.3d at 1108.  As the Ninth Circuit explained this year in *Glazer*, deliberately reckless conduct "only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct."  63 F.4th at 765.  That is because "recklessness in the [section] 10(b) context is, in the words of the Supreme Court, a form of intentional conduct." *In re LifeLock, Inc. Sec. Litig.*, 690 F. App'x 947, 950 (9th Cir. 2017).   Thus, Plaintiff must make "allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature" of the alleged misstatement. *Metzler Inv. GMBH* v. *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008).

### 2. Plaintiff Fails to Plead Facts Showing Gorman Acted with Deliberate Recklessness

#### i. Plaintiff Does Not Allege Any Contemporaneous Facts Showing Gorman Knew Her Statement Was False

Plaintiff fails to plead particularized facts showing that Gorman had access to any information contradicting her Statement before she made it in April 2021.  The TAC does not allege any meetings, calls, briefings, or documents before April 2021 discussing any negative experiences that direct response advertisers were having with SKAN.  This is fatal to Plaintiff's claim. *See Curry* v. *Yelp Inc.*, 875 F.3d 1219, 1227 (9th Cir. 2017) (requiring "detailed and specific allegations about management's exposure to factual information").

ii.    <u>Plaintiff's Other Allegations—Either in Isolation or Collectively—Do Not Give Rise to a Strong Inference of Scienter</u>

Absent well-pleaded facts concerning Gorman's state of mind at the time of the April 2021 Statement, Plaintiff seeks to create a strong inference of scienter by relying on an assortment of other, irrelevant allegations:  (1) confidential witnesses who are not alleged to have possessed—or communicated to Gorman—information contradicting the Statement (Opp. 15–17); (2) Gorman's position as Chief Business Officer and her general statements about ATT and SKAN (Opp. 11–13); (3) after-the-fact reactions by analysts to the April 2021 Statement (Opp. 13–15); and (4) Gorman's October 2021 disclosure that, "over time," Snap saw SKAN results diverge meaningfully from other measurement solutions (Opp. 16).  None of these allegations—either in isolation or collectively—give rise to a strong inference of scienter.

***Confidential Witnesses***:  Plaintiff does not argue that the CWs "directly share[d] negative information about SKAN with Gorman." (Opp. 17.)  This dooms Plaintiff's reliance on its CWs to raise a strong inference of scienter.  As the Ninth Circuit explained in *City of Dearborn Heights Act 345 Police & Fire Retirement System* v. *Align Technology, Inc.*, there is no strong inference where plaintiff "does not allege" that CWs "personally disclosed [the third party's business practice at issue] to" defendants.  856 F.3d 605, 620 (9th Cir. 2017).  The Court previously held that the prior complaint's CW allegations were inadequate because none of the CWs communicated information to Gorman contradicting her Statement.  (Ruling at 33–34.)  The Court should make the same finding here.

**CW1.**  Although CW1 claims there were "few adoptees" of SKAN, there are no facts to suggest that she—an Account Strategist in the "gaming advertising group"—was in a position to have had company-wide knowledge about this issue (Br. 12–13; ¶¶ 124–27 & n.13) and no indication she knew, or communicated to Gorman, the percentage of direct response revenue the "few adoptees" represented (Opp. 15).

7

The TAC also does nothing to address the Court's concern that it was "not clear from the [SAC] that CW1's alleged account of the ineffectiveness of SKAN [was] a contemporaneous fact." (Ruling at 31.)

**CW2.** CW2 claims she reviewed a spreadsheet in August 2021, four months *after* Gorman made the Statement, that purportedly referred to the number of direct response advertisers that had implemented SKAN. (¶ 137.) That is irrelevant since the April 2021 Statement concerns advertisers "represent[ing] a majority of [Snap's] direct response advertising revenue"—not a majority of direct response advertisers. (MTD-Ex. 2-18; *see also* MTD-Ex. 2-32.) Plaintiff dismisses this as a "distinction without a difference" (Opp. 16), which is, effectively, a request that the Court ignore what Gorman actually said. At bottom, Plaintiff cannot get around the fact that the alleged spreadsheet does not contradict Gorman's Statement. Plaintiff also does not allege that the data conveyed in the spreadsheet existed in April 2021. That CW2's colleague, Ouyang, said that the spreadsheet was "not looking good" (Opp. 16), does not remedy these defects since Plaintiff does not allege that the spreadsheet showed anything about the percentage of direct response *revenue* represented by advertisers listed on the spreadsheet, and Plaintiff does not claim that Ouyang knew anything about that topic. And, although Plaintiff reiterates CW2's claim she had an "extremely close working relationship," "frequent texts," and "intimate revenue forecasting meetings" with Gorman (Opp. 16 n.5), Plaintiff tellingly does not assert that CW2 communicated any information to Gorman that contradicted her April 2021 Statement. Finally, although CW2 asserts that "Gorman could not justify saying things were successfully implemented" because "Snap had barely begun working with advertisers on SKAN," that allegation is wholly conclusory. (¶ 136.) Plaintiff does not dispute that CW2 was not involved in helping advertisers transition to or implement SKAN, so CW2 has not alleged facts showing she had a factual basis to criticize Gorman. (*See* Br. 14–15; Opp. 16 n.5.)

**CW3 and CW4.** In its Opposition, Plaintiff merely restates the allegations of

8

CW3 and CW4 without grappling with the fundamental defects identified in Defendants' opening brief: that the allegations are conclusory and speculative, do not relate to direct response advertisers, and say nothing about Gorman's state of mind in making her Statement. (Opp. 16–17; Br. 16–17.) In addition, CW3 does not allege she worked with SKAN or with Snap's advertisers (¶¶ 145–48) and CW4 did not even work for Snap and does not allege she had access to any internal Snap data. (¶¶ 149–52.)

***Gorman's Senior Position and Public Statements***: Plaintiff asserts that Gorman acted with scienter because, in her role as Chief Business Officer, she had "first hand, intimate knowledge about Snap's DR business, ATT and its progress in implementing SKAN" and made general statements about those topics. (Opp. 12.) This Court previously rejected these allegations as insufficient as they lack facts showing that Gorman "knew or had access to information that [her] statements were false." (Ruling at 33.) As the Ninth Circuit explained in *Berson* v. *Applied Signal Technology, Inc.*, plaintiffs cannot merely argue that "defendants' prominent positions" mean "they ought to have known better." 527 F.3d 982, 989 (9th Cir. 2008).

Plaintiff also makes several unsupported allegations trying to boost Gorman's responsibility for ATT and SKAN. Plaintiff claims Spiegel said Gorman "was 'better positioned' to discuss [ATT and SKAN] and '[was] having a lot of conversations with [Snap's advertisers]' about" ATT and SKAN. (Opp. 12 (quoting MTD-Ex. 10-149).) But it is Plaintiff who inserted "ATT and SKAN" in brackets into Spiegel's quote; while Spiegel spoke about ATT or SKAN, he turned the question over to Gorman to discuss Snap's "brand safety and privacy across the entire industry." (MTD-Ex. 10-149.) And it was advertisers' statements about these "brand safety and privacy" issues (*id.*) that Gorman said "she could personally speak to"—not advertisers' statements about ATT and SKAN, as Plaintiff wrongly asserts (Opp. 12). Plaintiff also broadly claims that "Gorman was personally responsible for overseeing Snap's response to

9

ATT" (Opp. 11), but the TAC alleges only that Gorman oversaw Snap's direct response strategy, not its response to ATT (¶¶ 168–71). And Plaintiff claims that Gorman confirmed that SKAN's successful implementation "mitigated" ATT (Opp. 12), but she did not in fact say that. Rather, an analyst questioned whether advertisers' SKAN implementation would "mitigate some of the IDFA headwinds" and Gorman responded by cautioning that while Snap was "really pleased to see that advertisers that represent the majority of our direct response revenue have implemented it so far . . . we know that *there's a lot of work to be done to transition smoothly*." (MTD-Exs. 2-32 to 2-33 (emphasis added).)

The cases Plaintiff relies upon are inapposite. They stand for the proposition that where a speaker promotes his or her knowledge of the *minutiae* of internal company data, and where that data contradicts the speaker's statement, the speaker can be assumed to have had knowledge of the data. (Opp. 12–13.)[2] Here, by contrast, not only does Plaintiff fail to allege that Gorman promoted her knowledge of the minutiae relating to SKAN, but Plaintiff also fails to allege that any data ***even existed***

---

[2] *Reese* v. *Malone*, 747 F.3d 557, 572 (9th Cir. 2014) (in a case involving a statement about oil pipeline corrosion, defendant was "directly responsible" for pipeline operations, reviewed corrosion data, and was considered "among the first to know" corrosion information); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017) (defendants "had access to and used reports documenting in real time" information contradicting the alleged misstatement); *Longo* v. *OSI Sys., Inc.*, 2021 WL 1232678, at *9-10 (C.D. Cal. Mar. 31, 2021) ("[D]efendants monitored and specifically discussed the [contract that the misstatements concerned] in nine separate board meetings"); *Evanston Police Pension Fund* v. *McKesson Corp.,* 411 F. Supp. 3d 580, 602 (N.D. Cal. 2019) (defendants "touted intimate knowledge of generic drug manufacturers, generic drug pricing, and challenges that might impede supply" where defendants alleged concealed anti-competitive practices in that market); *Weston* v. *DocuSign, Inc.*, 2023 WL 3000583, at *21 (N.D. Cal. Apr. 18, 2023) (defendants had access to database with contradictory information); *In re Zillow Grp., Inc. Sec. Litig.*, 2019 WL 1755293, at *20 (W.D. Wash. Apr. 19, 2019) (where defendants allegedly failed to disclose the purported illegality of Zillow's co-marketing program, defendants made public statements "displaying their familiarity with how the co-marketing program was designed and operated").

10

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT (2:21-cv-8892-GW-RAOx)

in April 2021 that contradicted Gorman's statement that "advertisers that represent" less than a "majority of [Snap's] direct response revenue have implemented" SKAN (MTD-Ex. 2-32)—much less that Gorman knew about such data.

*After-the-fact Analyst Reactions to the April 2021 Statement*:  Plaintiff argues that "[t]he fact that analysts repeated verbatim" Gorman's Statement somehow establishes that Gorman was deliberately reckless when she made it (Opp. 13); but Plaintiff does not explain why that is so.  *See Iron Workers Local 580 Joint Funds* v. *Nvidia Corp*., 2020 WL 1244936, at *12 (N.D. Cal. Mar. 16, 2020) (rejecting argument that "repeated questions from analysts" showed deliberate recklessness). Indeed, Plaintiff cites no authority that supports this odd proposition.[3]

Plaintiff also inaccurately represents that analysts "conclud[ed] that Snap was insulated from ATT's impact" because of Snap's advertisers' "successful implementation" of SKAN.  (Opp. 13.)  Not only is this irrelevant to Gorman's scienter, but it is incorrect.  The analyst reports that Plaintiff cites (Opp. 7–8) show that even after the April 2021 Statement, analysts still viewed ATT to be a significant risk to Snap.  For example, Bloomberg noted that "it could take several months until [Snap] knows the full impact [Apple's privacy] change could have on revenue."  (Ex. 1-3.)  JMP wrote "[w]e are watching for potential headwinds associated with [ATT] as iOS 14.5 rolls out this month."  (Ex. 2-7.)  Oppenheimer noted that there were still expected "IDFA headwinds" to Snap's Q2 revenue. (Ex. 3-20.)  And Raymond James commented that there were "some negative impacts from Apple['s] IDFA roll-out." (Ex. 4-34.)  Accordingly, there is no basis for Plaintiff's argument that Gorman's

---

[3] In *In re Finisar Corp. Securities Litigation*, which concerned the claim that a company falsely denied an inventory build-up, plaintiff alleged that "information regarding inventory levels would have been disclosed to Defendants prior to and during the Class Period[,]" and that "[t]aken collectively" with "multiple confidential witnesses," analyst interest, and "unusually large" stock sales, plaintiff's allegations sufficed to give rise to a strong inference of scienter.  2017 WL 1549485, at *7 (N.D. Cal. May 1, 2017).  There are no such allegations here.

Statement led the market to believe that the ATT storm had been weathered and that ATT posed no further risk to Snap.

***Gorman's October 2021 Disclosure***: Plaintiff maintains that Gorman admitted in October 2021 that, as of April 22, 2021, "Snap's DR advertisers had in fact only barely begun to 'explore[] and test[] [SKAN],' and upon doing so, had *immediately* 'surfaced a variety of concerns about its limitations.'" (Opp. 9–10 (emphasis added).) This is a made-up quote and a made-up admission. Gorman actually said the exact opposite, explaining:

> The *initial results* we observed using SKAN were generally aligned with prior industry standard solutions . . . . However, *over time*, we saw SKAN measurement results diverge meaningfully from the results we observed on other first and third-party measurement solutions, making SKAN unreliable as a standalone measurement solution. Furthermore, as our advertising partners have explored and tested SKAN's solutions, they have surfaced a variety of concerns about its limitations.

(MTD-Ex. 8-104 (emphasis added).) In short, Gorman made clear in October that the SKAN reliability issues *did not surface upon initial use*. Indeed, this Court already found that "Gorman's October 2021 statements do not directly contradict her earlier statement." (Ruling at 35.) The Court went on to say that because the October statement "is equally susceptible to Defendants' interpretation" it could not "carry the weight of the entire . . . complaint" given "a host of other insufficient allegations." (Ruling at 36 (cleaned up).) The Court should reach the same conclusion here.

        iii.    <u>Plaintiff Cannot Plead a Strong Inference of Deliberate Recklessness by Asserting Gorman Had "No Basis" for the April 2021 Statement</u>

Plaintiff also argues that Gorman should be found to have acted with deliberate recklessness because she had "no basis whatsoever to proclaim to investors that any 'successful implementation' of SKAN had occurred." (Opp. 3–4; *see also* Opp. 5, 10, 15–17, 19–20.) There are several problems with this argument.

*First*, like its predecessor, the TAC does not plead facts showing that Gorman lacked a basis for her Statement at the time. Plaintiff relies on CW3, who speculates

12

that Gorman "just made that up" because "there [was] no way that [Gorman] could have made a statement like that based on actual data." (Opp. 11.) CW3, however, fails to allege any facts showing she was in a position to know what Gorman was relying on as the basis for her Statement, and she does not identify any of the "actual data" from April 2021 that purportedly undermines Gorman's Statement. Plaintiff implies that because Gorman's Statement was before the ATT rollout, it is suspect; but mere suspicion is not sufficient to plead securities fraud. Plaintiff does not plead *any facts* suggesting that Gorman was aware that advertisers were unhappy with their initial interactions with SKAN as of April 2021, such that their implementation of it was not successful. For these reasons, CW3's unsupported, conclusory opinion that Gorman lacked a basis for her Statement does not constitute a fact that raises a strong inference that Gorman acted with deliberate recklessness.

*Second*, Plaintiff's argument that Gorman lacked a sufficient basis to make her Statement amounts, at most, to a claim that Gorman was negligent or reckless, not that she acted with conscious intent. The Ninth Circuit has explicitly stated that negligence or even standard recklessness is not sufficient to establish scienter. *See DSAM Global Value Fund* v. *Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002) ("Negligence, even gross negligence, does not rise to the level of the nefarious mental state necessary to constitute securities fraud[.]"); *Glazer*, 63 F.4th at 765 ("Deliberate recklessness is a higher standard than mere recklessness[.]"). Instead, Plaintiff must show "an *extreme* departure from the standards of ordinary care," with "some degree of intentional or conscious misconduct," *Glazer*, 63 F.4th at 765 (emphasis in original), and a mere lack of a basis does not meet that high standard. Plaintiff cites no authority to the contrary.[4]

---

[4] The two cases Plaintiff cites—*McKesson*, 411 F. Supp. 3d at 602 and *Patel* v. *Axesstel, Inc.*, 2015 WL 631525 (S.D. Cal. Feb. 13, 2015)—are inapposite. In *McKesson*, where defendants failed to disclose the existence of an illegal antitrust conspiracy, the court found scienter only by combining defendant's admission that he

13

*Finally*, Plaintiff's "no basis" argument is little more than an effort to "flip the script" and require Gorman to come forward with facts defending her Statement. That improperly shifts the burden to Defendants to show lack of scienter. Not surprisingly, Plaintiff has not identified a single court that has adopted this approach.

### 3.    The Core Operations Inference Does Not Apply on These Alleged Facts

Unable to allege particularized facts showing that Gorman actually intended to defraud investors or was deliberately reckless, Plaintiff asks the Court to invoke the rarely applied core operations doctrine and simply *infer* that Gorman was deliberately reckless. This argument, which Plaintiff also made last time, fails.

*First*, as Defendants pointed out in their opening brief and above, Plaintiff cannot rely on the doctrine because Plaintiff fails to plead facts showing information existed as of April 2021 that contradicted Gorman's Statement, let alone particularized facts that Gorman had actual access to such information. (*Supra* 6–10; Br. 18–19; *see also* Ruling at 36–37.)

*Second*, Plaintiff does not meet the "absurdity" prong of the doctrine, which applies only where "the relevant fact is of such prominence" that the Court can infer that the defendant knew it. *S. Ferry LP, No. 2* v. *Killinger*, 542 F.3d 776, 786 (9th Cir. 2008). Here, such an inference is particularly inappropriate because, unlike most core operations cases, Plaintiff's claim does not involve Snap's conduct or a Snap

was "positioned 'to see how price is behaving,' [and to] 'monitor pricing trends,'" with the "magnitude of the price-fixing conspiracy," which was already having a "significan[t]" effect on the company's revenue, where the company's "unique compensation structure incentivized defendants . . . to perpetuate the fraud." 411 F. Supp. 3d at 601–03. *Patel* concerned the false disclosure of contracts constituting almost 40% of the company's quarterly revenue. The court found scienter pleaded where defendants admitted that they "'took a real hard look' at the receivables" and the court found they would be "would be among the first (and only) [employees] to know of the details" given the "exceedingly small size of the company." 2015 WL 631525, at *9, *11. No such allegations are present here.

14

product; rather, it involves the experience of third parties (Snap's advertisers) using a product provided by a third party (Apple's SKAN).  Under these circumstances, there is scant basis for the Court to assume that Gorman must have known Snap's *advertisers* were having technical issues implementing *Apple's* measurement product (SKAN) or to find it would have been absurd for her not to have such knowledge.

As explained in Defendants' opening brief, Judge Gonzalez Rogers declined to apply the core operations inference in *In re Twitter* because plaintiffs in that case had "not alleged facts supporting the inference that the [privacy setting change]'s impact on the company's financials was so dramatic that it would be absurd to think that [defendants] did not know that something was wrong."  506 F. Supp. 3d 867, 889 (N.D. Cal. 2020), *aff'd*, 29 F.4th 611 (9th Cir. 2022) (brackets in original) (quoting *Webb* v. *SolarCity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018)); *see also Plumbers & Steamfitters Local 60 Pension Trust* v. *Meta Platforms, Inc.*, No. 4:22-cv-01470 (N.D. Cal. July 21, 2023), Dkt. No. 74 (no scienter where "adverse consequences of [Apple's privacy changes]" had not "as a factual matter, materially and significantly impacted Meta's business as of Q2 and Q3 2021").  Here, Plaintiff does not allege that issues with SKAN had *any* effect on Snap's revenue prior to the April 2021 Statement.

The cases Plaintiff relies upon are distinguishable as they all involved facts far more prominent to an individual defendant.[5]  For example, in *Reese* v. *Malone*, which involved corrosion of an oil pipeline in Prudhoe Bay, the court found that it was

---

[5] In *Shenwick* v. *Twitter*, the Court held that it would be absurd for defendants "not to have been aware" of an adverse usage trend *over the course of five months* in what defendants acknowledged publicly was Twitter's primary user engagement metric. 282 F. Supp. 3d 1115, 1145–47 (N.D. Cal. 2017).  In *Azar* v. *Yelp*, the Court held that it would have been absurd to suggest that management was not aware of Yelp's own issues with retaining local advertisers given that more than half of Yelp's revenue derived from those advertisers; it did not involve, as here, advertisers' experience with a third-party product.  2018 WL 6182756, at *20–21 (N.D. Cal. Nov. 27, 2018).

15

absurd to assume defendant did not know of the corrosion where defendant was "an experienced chemical engineer," served as the "Greater Prudhoe Bay Performance Unit Leader," "was directly responsible for the Prudhoe Bay pipeline operations," would have been "among the first to know" about corrosion problems, received correspondence from regulators regarding corrosion after a similar oil spill that "was addressed directly to [defendant]," and corrosion issues were "fundamental to operations of her business over the tenure of her career." 747 F.3d 557, 571–72, 576 (9th Cir. 2014). By contrast, here, there is no basis to simply assume that Gorman knew of any issues advertisers had in implementing SKAN where Gorman did not have a technical background (Plaintiff alleges she had a background in advertising and marketing (¶ 26)) and was not directly responsible for helping advertisers implement SKAN, which was a third party's product being implemented by the company's customers.[6]

*Berson* is also inapposite as the court in that case held it was absurd for defendants not to know about stop-work orders by the company's largest customers when the financial impact of those orders was "devastating" to their company's revenue. 527 F.3d at 984. By contrast, here, Snap's revenue is not alleged to have

---

[6] Plaintiff argues that it was absurd for Gorman to "fail to pay attention" to SKAN, a third-party product because Snapchat "can only run on third-party devices, and virtually all of Snap's revenue comes from third party advertisers." (Opp. 20.) This argument fails for two reasons. *First*, "the core-operations inference only allows a court to infer executives' knowledge about their own company's core operations . . . not knowledge regarding the operations of a" third party. *In re Yahoo! Inc. S'holder Derivative Litig.*, 153 F. Supp. 3d 1107, 1123 n.10 (N.D. Cal. 2015). *Second*, Plaintiff misstates the standard for the absurdity prong: The question is not whether it would be absurd for Gorman to "fail to pay attention" to SKAN (Opp. 20) but whether it is "absurd to believe that she did not have *knowledge* of information contradicting her statements," *Reese*, 747 F.3d at 576 (emphasis in original). It is not sufficient to plead that Gorman would generally "pay attention" to SKAN; rather, Plaintiff must allege facts showing Gorman had *knowledge* of information contradicting her statements. Plaintiff fails to do so.

16

been affected by ATT until several months after Gorman made her Statement, when Snap missed its previously announced third-quarter guidance by a mere 0.3 percent. (Br. 6; *see also* Ruling at 19 n.16.)

Finally, Plaintiff suggests that the Court should infer scienter under the core operations inference based on the assumption that Gorman had no basis for her Statement. As noted above, this argument is an improper attempt to shift Plaintiff's burden to Defendants. Not surprisingly Plaintiff has not cited a single case invoking the core operations doctrine based upon this argument.

### 4. Weighing All the Inferences, the Non-Culpable One Is More Compelling

Unlike most motions to dismiss, "[i]n determining whether a strong inference of scienter exists," courts may not take all inferences in favor of plaintiff. *Nursing Home Pension Fund, Loc. 144* v. *Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004). Instead, the Court "must consider all reasonable inferences, whether or not favorable to the plaintiff." *Id.* Therefore, even if the Court finds that Plaintiff has pleaded some facts supporting an inference of scienter or that the core operations inference applies, the Court must weigh that against facts suggesting non-culpable explanations, including (1) Gorman's and Snap's numerous disclosures about ATT's risks, (2) the lack of allegations that Gorman had a motive to lie, and (3) the indisputable ambiguity of Gorman's Statement.

***Numerous Warnings*:** As this Court has already held, "Defendants repeatedly disclosed that ATT could have a meaningful impact, including serious harm, on Snap's business." (Ruling at 21.) Such disclosures are fundamentally inconsistent with an intent to deceive and cut against a finding of scienter. (Br. 11–12.) Courts routinely find that "the thoroughness of [defendant's] risk disclosures . . . negate any inference of scienter." *Jasin* v. *Vivus, Inc.*, 2016 WL 1570164, at *22 (N.D. Cal. Apr.

17

19, 2016), *aff'd*, 721 F. App'x 665 (9th Cir. 2018).[7]  Plaintiff argues that these cases "involved highly distinguishable facts" but fails to explain what those facts are.  (Opp. 14 n.4.)   And Plaintiff's claim that these cases did not find false or misleading statements is inaccurate.  *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1424 (9th Cir. 1994) (assuming *arguendo* that falsity was pleaded, affirming on scienter grounds based in part on rationale that risk warnings negated intent to deceive).

*Absence of Motive to Defraud*:  Plaintiff concedes that Gorman did not have a motive to mislead Snap's investors.  And it does not deny that the "lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter," *Prodanova*, 993 F.3d at 1108.; (Br. 10).  All that Plaintiff can do is meekly argue that motive is not absolutely required to bring a claim.  (Opp. 20 n.8.) What Plaintiff cannot deny, however, is that its failure to allege a motive weighs heavily in favor of finding Plaintiff has not pleaded scienter.  (Br. 10.)

*Ambiguity of April 2021 Statement*:  Plaintiff does not respond to Defendants' arguments that the ambiguity of the Statement weighs against a finding of scienter. (Br. 11.)   That Gorman's Statement is subject to a non-fraudulent interpretation is fundamentally inconsistent with any intent to defraud.  *See Nguyen* v. *Endologix, Inc.*, 962 F.3d 405, 418 n.3 (9th Cir. 2020) (alleged misstatement "too unclear to support a strong inference of scienter"); (*see also* Ruling at 32 ("Defendants' interpretation of this statement is entirely conceivable.")).  Indeed, if Gorman had "aimed to inflate [Snap's] share price at all costs, [s]he could have chosen far less ambiguous language than [s]he did." *Boykin* v. *K12, Inc.*, 54 F.4th 175, 186 (4th Cir. 2022).  And when asked by an analyst on the same call as the April 2021 Statement, "[W]hat defined

---

[7] *See also, e.g.*, *Brennan* v. *Zafgen, Inc.*, 853 F.3d 606, 617 (1st Cir. 2017) ("disclosures both before and during the class period weaken the complaint's scienter showing."); *Yates* v. *Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 888 (4th Cir. 2014) (similar); *Horizon Asset Mgmt. Inc*. v. *H & R Block, Inc.*, 580 F.3d 755, 764 (8th Cir. 2009) (similar).

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT (2:21-cv-8892-GW-RAOx)

success of that implementation?", Gorman could have seized the opportunity to expand on advertisers' SKAN implementation instead of responding that the fact advertisers had "implemented" it was "what defined success of that implementation." (MTD-Ex. 2-32.)  And finally, had she intended to defraud investors, Gorman surely would not have explicitly warned *on the very same call* that Snap was just "begin[ning] [to] implement[] and test[] SKAN with [its] partners" and there was "a lot of work to be done to transition smoothly."  (MTD-Exs. 2-18, 2-33.)  At bottom, the innocent explanation that Gorman was "trying to respond to uncertainty created by ATT and SKAN" (Ruling at 38) remains far more compelling than any fraudulent inference.

\*          \*          \*

For all these reasons, Plaintiff has not met its burden of pleading facts showing a strong inference that Gorman acted with deliberate recklessness or that Gorman had an actual intent to defraud investors.  Accordingly, Plaintiff's section 10(b) claim should be dismissed.

### B.    PLAINTIFF FAILS TO PLEAD A SECTION 20(A) CONTROL PERSON CLAIM

Plaintiff does not dispute that if its section 10(b) claim is dismissed, then its section 20(a) claim must be dismissed as well.  *SolarCity*, 884 F.3d at 858; (Ruling at 38–39).

In addition, Plaintiff does not dispute that a CEO, such as Spiegel, is not presumptively a "control person" and instead the TAC must plead facts showing that Spiegel had "actual control over preparing and presenting the April 22 Statement." (Br. 21.)  But here, Plaintiff pleads no such facts, pointing only to Spiegel's voting power and that he had "control over [Snap's] day-to-day management." (*Id.*)  But if these sparse allegations adequately allege a control person claim against Spiegel, almost all CEOs are liable as to all statements on all earnings calls they attend. Plaintiff does not cite any case for that wide-ranging proposition and for good reason:

19

that is not the law.  *See Bruce* v. *Suntech Power Holdings Co.*, 2013 WL 6843610, at *4, 9 (N.D. Cal. Dec. 26, 2013) (rejecting "conclusory" claim that CFO controlled misstatements by virtue of his "responsibilities and activities" as CFO).

The decisions Plaintiff cites are inapt.  (Opp. 21.)  Relying on *In re Apple Securities Litigation*, Plaintiff argues that Spiegel exercised control over Gorman's Statement because he "could have corrected the record."  2020 WL 6482014, at *14 (N.D. Cal. Nov. 4, 2020).  But in *Apple*, the Court held it was the CFO who could have "corrected" a financial misstatement because he was "charged with delivering the company's financial information."  2020 WL 6482014 at *14.  Here, Spiegel is not alleged to have been charged with delivering Snap's statements regarding SKAN implementation.   In *In re Energy Recovery Inc. Securities Litigation*, all eight actionable statements in that case were made orally by the CEO, leaving no doubt as to his authority over the company's statements on those topics.  2016 WL 324150, at *21 (N.D. Cal. Jan. 27, 2016).

For all of these reasons, the section 20(a) claim against Spiegel should be dismissed.

## III.    CONCLUSION

Dismissal with prejudice is appropriate where "Plaintiff[] ha[s] had ample opportunity to properly plead a case and ha[s] failed to do so."  *Salameh* v. *Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).  This is especially so where "the [C]ourt gave Plaintiff[] specific instructions on how to amend the complaint, and Plaintiff[] did not comply."  *Id.*; *see also Nguyen*, 962 F.3d at 420 (affirming dismissal with prejudice where the "district court had already given [Plaintiff] leave to amend" "because 'it was clear that the plaintiff[ ] had made [its] best case and had been found wanting'").

This is Plaintiff's *third* complaint.  After Defendants moved to dismiss the first amended complaint, Plaintiff voluntarily amended it.   The Court then granted Defendants' motion to dismiss that complaint in its entirety.  In so doing, the Court

gave Plaintiff specific guidance on what was needed to avoid dismissal. That Plaintiff "failed to correct these deficiencies in its [Third] Amended Complaint is a strong indication that the [P]laintiff[] ha[s] no additional facts to plead." *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009).

The Court should put an end to this litigation and dismiss the Third Amended Complaint with prejudice.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT (2:21-cv-8892-GW-RAOx)

DATED:  August 25, 2023          By:    *Daniel J. Kramer*
                                        Daniel J. Kramer

DANIEL J. KRAMER (*admitted pro hac vice*)
AUDRA J. SOLOWAY (*admitted pro hac vice*)
DANIEL S. SINNREICH (*admitted pro hac vice*)
KRISTINA A. BUNTING (*admitted pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY  10019-6064
Tel:   (212) 373-3000
Fax:   (212) 757-3990
Email:       dkramer@paulweiss.com
Email:       asoloway@paulweiss.com
Email:       dsinnreich@paulweiss.com
Email:       kbunting@paulweiss.com

EKWAN E. RHOW (SBN 174604)
AHARON B. KASLOW (SBN 322769)
**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, CA  90067-2561
Tel:   (310) 201-2100
Fax:   (310) 201-2110
Email:       erhow@birdmarella.com
Email:       akaslow@birdmarella.com

*Attorneys for Snap Inc., Evan Spiegel, and Jeremi Gorman*

22

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Snap Inc., Evan Spiegel, and Jeremi Gorman, certifies that this brief contains 6,995 words, which complies with the word limit of L.R. 11-6.1.

/s/ *Kristina A. Bunting*
Kristina A. Bunting

Dated:  August 25, 2023

---

23