1   **SAXENA WHITE P.A.**
    Maya Saxena
2   msaxena@saxenawhite.com
    Joseph E. White, III
3   jwhite@saxenawhite.com
    Lester R. Hooker (241590)
4   lhooker@saxenawhite.com
    7777 Glades Road, Suite 300
5   Boca Raton, FL 33434
    Telephone: (561) 394-3399
6   Facsimile: (561) 394-3382

7   *Additional Counsel listed on signature page*

8   *Lead Counsel for Lead Plaintiff
    and the Class*

9

**BIENERT KATZMAN
LITTRELL WILLIAMS LLP**
John L. Littrell (221601)
jlittrell@bklwlaw.com
Michael R. Williams (192222)
mwilliams@bklwlaw.com
360 E. 2nd Street, Suite 625
Los Angeles, CA 90012
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Liaison Counsel for Lead Plaintiff
and the Class*

10              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
11                       **WESTERN DIVISION**

12

13  KELLIE BLACK, individually and on
    behalf of all others similarly situated,

14          Plaintiff,

15          vs.

16  SNAP INC., EVAN SPIEGEL, and
    JEREMI GORMAN,

17          Defendants.

18

19

20

21

22

23

24

25

26

27

28

)  No. 2:21-cv-08892-GW (RAO)
)
)  CLASS ACTION
)
)  NOTICE OF UNOPPOSED MOTION
)  AND MEMORANDUM OF POINTS
)  AND AUTHORITIES IN SUPPORT
)  OF LEAD PLAINTIFF'S
)  UNOPPOSED MOTION FOR
)  PRELIMINARY APPROVAL OF
)  CLASS ACTION SETTLEMENT
)
)  Date: December 4, 2025
)  Time: 8:30 A.M.
)  Courtroom.: 9D
)  Honorable George H. Wu

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT – 2:21-CV-08892-GW (RAO)

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that Lead Plaintiff Oklahoma Firefighters Pension and Retirement System hereby moves the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for an Order: (1) granting preliminary approval of the proposed settlement (the "Settlement"), on the terms set forth in the Stipulation of Settlement and the exhibits attached thereto, (the "Stipulation," or "Settlement Agreement," submitted herewith); (2) directing that potential Settlement Class Members be given notice of the proposed Settlement in substantially the same form and manner set forth in the Stipulation; (3) setting a hearing date for the Court to consider final approval of the proposed Settlement; and (4) setting a schedule for various events related thereto.[1]

Pursuant to Local Rule 7-3, and as set forth in the Stipulation (¶3.2), Lead Counsel has conferred with counsel for Defendants, and Defendants do not oppose this motion. The Parties do not believe a hearing is necessary on this unopposed motion for preliminary approval of the Settlement and may be submitted on the papers.  Should a hearing be requested by the Court, this motion is noticed for hearing at 8:30 a.m. on December 4, 2025, or at the Court's convenience, before the Honorable George H. Wu of the United States District Court for the Central District of California, United States Courthouse, 350 West 1st Street, Los Angeles, CA, 90012, Courtroom 9D, 9th Floor.

This motion is supported by the Stipulation and exhibits thereto; the accompanying memorandum of points and authorities; the Declaration of Eric A. Nordskog ("Nordskog Declaration"); and all other papers and proceedings herein. A proposed Order is submitted herewith.

---

[1] All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed to them in the Stipulation, a true and correct copy of which is submitted herewith.  Unless otherwise noted, all emphasis is added and citations are omitted.

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ..................................................................................... 1

II.  PROCEDURAL HISTORY ...................................................................... 3

III.  SETTLEMENT NEGOTIATIONS ........................................................... 4

IV.  SETTLEMENT TERMS ........................................................................... 4

V.  THE SETTLEMENT MERITS PRELIMINARY APPROVAL .................... 7

    A.  Plaintiff and Lead Counsel Have Adequately Represented the Class ............................................................................................. 9

    B.  The Settlement Results from Good-Faith, Arm's-Length Negotiations ................................................................................... 9

    C.  The Relief Provided for the Class Is Adequate ............................... 11

        1.  The Amount Offered in the Settlement Favors Approval ........ 11

        2.  The Settlement Weighs the Strength of Plaintiff's Claims with the Risks of Continuing Litigation ................................... 13

        3.  The Proposed Method for Distributing Relief Is Effective ...... 15

        4.  Lead Counsel's Fee and Expense Request Is Fair and Reasonable ............................................................................. 16

        5.  The Parties Have No Other Agreements Besides Opt-Outs ........................................................................................ 16

        6.  All Class Members Are Treated Equitably ............................. 17

VI.  THE CLASS SHOULD BE CERTIFIED ................................................. 17

    A.  Numerosity .................................................................................... 18

    B.  Commonality ................................................................................. 18

    C.  Typicality ...................................................................................... 19

    D.  Adequacy ...................................................................................... 19

    E.  The Requirements of Rule 23(b)(3) Are Also Met ........................... 19

VII.  NOTICE TO THE CLASS IS WARRANTED ......................................... 20

VIII.  PROPOSED SCHEDULE OF EVENTS ................................................ 21

IX.  CONCLUSION ...................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................20

*Baron v. HyreCar Inc.*,
  2024 WL 3504234 (C.D. Cal. July 19, 2024) .............................................*passim*

*Baten v. Michigan Logistics, Inc.*,
  2022 WL 17481068 (C.D. Cal. Dec. 6, 2022)......................................7, 8, 10, 11

*Baten v. Michigan Logistics, Inc.*,
  2023 WL 2440244 (C.D. Cal. Mar. 8, 2023) ................................................ 7

*Brown v. China Integrated Energy Inc.*,
  2015 WL 12720322 (C.D. Cal. Feb. 17, 2015) .................................................18

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .............................................*passim*

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .........................................9

*Davis v. Yelp, Inc.*,
  2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) .................................................15

*Elkies v. Johnson & Johnson Servs., Inc.*,
  2020 WL 10055593 (C.D. Cal. June 22, 2020).................................................13

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ................................................................19

*Ferris v. Wynn Resorts Ltd.*,
  2025 WL 2308698 (D. Nev. Jan. 31, 2025) .........................................16

*Fleming v. Impax Lab'ys Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022) .................................................20

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .........................................................8, 9

1

2                                                                              **Page**

3

4    *Hefler v. Wells Fargo & Co.*,
     2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ...................................................5, 17

5

6    *Hefler v. Wells Fargo & Co.*,
     2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..................................................7, 15

7

8    *Hunt v. Bloom Energy Corp.*,
     2024 WL 1995840 (N.D. Cal. May 6, 2024) ........................................................13

9

10   *In re Bluetooth Headset Products Liability Litigation*,
     654 F.3d 935 (9th Cir. 2011) ...................................................................................8

11   *In re FibroGen. Inc. Sec. Litig.*,
     2024 WL 6859589 (N.D. Cal. Feb. 13, 2024) ......................................................18

12

13   *In re ImmunityBio, Inc. Sec. Litig.*,
     2025 WL 834767 (S.D. Cal. Mar. 17, 2025) ...................................................12, 19

14

15   *In re ImmunityBio, Inc. Sec. Litig.*,
     2025 WL 1686263 (S.D. Cal. June 16, 2025) ...........................................6, 9, 17

16

17   *In re Lyft, Inc. Sec. Litig.*,
     2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) .....................................................6

18

19   *In re Oracle Corp. Sec. Litig.*,
     627 F.3d 376 (9th Cir. 2010) .................................................................................13

20

21   *In re Snap, Inc. Sec. Litig.*,
     334 F.R.D. 209 (C.D. Cal. 2019)......................................................................18, 19

22

23   *In re Veeco Instruments Inc. Sec. Litig.*,
     2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................................................10

24   *Indiana Pub. Ret. Sys. v. Cartwright*,
     2023 WL 12166203 (M.D. Tenn. Oct. 18, 2023)................................................18

25

26   *Jiangchen v. Rentech, Inc.*,
     2022 WL 22969666 (C.D. Cal. Jan. 6, 2022).........................................................5

27

28

1

2                                                                                           **Page**

3

4   *Jiangchen v. Rentech, Inc.*,
        2019 WL 13570065 (C.D. Cal. June 24, 2019)...........................................*passim*

5

6   *Kendall v. Odonate Therapeutics, Inc.*,
        2022 WL 1997530 (S.D. Cal. June 6, 2022) .......................................14

7

8   *Khoja v. Orexigen Therapeutics, Inc.*,
        2021 WL 5632673 (S.D. Cal. Nov. 30, 2021)......................................16

9   *Leventhal v. Chegg*,
        2024 WL 6859633 (N.D. Cal. Dec. 19, 2024) ................................5, 21

10

11  *Loomis v. Slendertone Distrib., Inc.*,
        2021 WL 873340 (S.D. Cal. Mar. 9, 2021) ...........................................8

12

13  *Oklahoma Firefighters Pension & Ret. Sys. v. Snap Inc.*,
        2024 WL 5182634 (9th Cir. Dec. 20, 2024)..........................................3

14

15  *Patel v. Trans Union, LLC*,
        2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) .....................................11

16

17  *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*,
        2022 WL 2093054 (D. Minn. June 10, 2022) ......................................16

18

19  *Roberts v. Zuora*,
        2024 WL 6847397 (N.D. Cal. Jan. 16, 2024) ......................................16

20

21  *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
        2025 WL 1243818 (N.D. Cal. Apr. 25, 2025)......................................18

22  *Shvager v. ViaSat, Inc.*,
        2014 WL 12585790 (C.D. Cal. Mar. 10, 2014) .....................................8

23

24  *Tanner v. Plavan Com. Fueling, Inc.*,
        2025 WL 2231304 (S.D. Cal. Aug. 4, 2025)........................................13

25

26  *Utne v. Home Depot U.S.A., Inc.*,
        2018 WL 11373654 (N.D. Cal. Aug. 21, 2018)....................................21

27

28

1

2                                                                                            **Page**

3

*Voulgaris v. Array Biopharma Inc.*,
    2021 WL 6331178 (D. Colo. Dec. 3, 2021) ........................................................ 10

*Ziegler v. GW Pharms., PLC*,
    2024 WL 1470532 (S.D. Cal. Apr. 3, 2024) .................................................. 2, 12

**RULES & STATUTES**

15 U.S.C. §78u-4(a)(4) ........................................................................................ 5, 17

Fed. R. Civ. P. 23.............................................................................................*passim*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff and Defendants have negotiated, at arms' length and with the assistance of the Honorable Layn R. Phillips (Ret.) and Seth Aronson of Phillips ADR Enterprises, P.C., a proposed $65 million Settlement for the benefit of the Class—an outstanding recovery considering the risk that the Class might recover nothing at all if the Action continued. The proposed Settlement provides the Class with a substantial, immediate benefit and avoids the significant and protracted risks and uncertainties present in this complex securities class action. As set forth below, the Settlement easily satisfies the standards for approval set forth in Rule 23 of the Federal Rules of Civil Procedure and the Ninth Circuit.

The $65 million recovery was achieved after more than three years of highly contested and risky litigation. Indeed, at the pleading stage, the Court twice dismissed this Action in its entirety, and Plaintiff was only able to obtain the recovery contemplated in the Settlement after successfully appealing the dismissal to the Ninth Circuit. Throughout the prosecution of this action, Plaintiff and Lead Counsel have expended significant litigation efforts, including: (i) thoroughly investigating their claims, including conducting interviews of numerous former Snap employees and Company partners; (ii) the filing of three detailed complaints; (iii) defeating Defendants' motion to dismiss the TAC on appeal; (iv) consultation with multiple financial and industry experts; (v) moving for class certification; (vi) obtaining and reviewing all documents produced by Defendants and third parties; (vii) defending the depositions of Plaintiff, Plaintiff's expert on market efficiency, Plaintiff's investment consultant, Plaintiff's investment manager, and a confidential witness cited in the complaints; (viii) exchanging mediation statements with Defendants; and (ix) engaging in a mediation session before the Parties accepted Judge Phillips' settlement recommendation. Through these efforts, Plaintiff developed a deep understanding of the strengths and weaknesses of its claims.

1    Defendants asserted aggressive defenses throughout the Litigation and, had

2    the Settlement not been reached, the Class would have faced complex hurdles in

3    proving its case, particularly with respect to overcoming Defendants' defenses to

4    falsity, scienter, and loss causation.  Notably, following the rulings on the motions

5    to dismiss and subsequent appeal, Plaintiff's claims had been narrowed to a single

6    alleged misstatement, namely the April 22, 2021 statement, for which Plaintiff

7    would have continued to face significant challenges.  Indeed, Defendants appeared

8    prepared to vigorously defend the case on the merits and would have made numerous

9    arguments regarding both liability and damages that could have defeated Plaintiff's

10   claims at class certification, summary judgment, or trial, thus reducing or even

11   eliminating the damages available to the Class.  Had the litigation continued,

12   Defendants' limited insurance funds would have further wasted in defending the

13   Action rather than contributing toward a recovery for the Class.  Thus, this risk of a

14   smaller recovery—or no recovery at all—weighs heavily in favor of settlement

15   approval.

16   The Settlement avoids these risks (and others), as well as the further delay and

17   expense of continued litigation, while providing a substantial and immediate

18   monetary recovery for the Class.  Indeed, the $65,000,000 Settlement is ***more than***

19   ***six times*** the $10 million median settlement amount in securities class actions in the

20   Ninth Circuit over the past decade and falls well within the range of settlements

21   courts in this Circuit regularly approve.[2]

22   At this time, only "a preliminary fairness evaluation" of the proposed

23   Settlement and a determination that the Class should be notified of the Settlement

24   are required.  *See Ziegler v. GW Pharms., PLC*, 2024 WL 1470532, at *3 (S.D. Cal.

25   Apr. 3, 2024).  Plaintiff submits that the Settlement warrants preliminary approval.

26

27   [2] *See Securities Class Action Settlements, 2024 Review and Analysis*, at 20 (2025)
available at https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-

28   Class-Action-Settlements-2024-Review-and-Analysis.pdf    (the    "Cornerstone
Report").

## II.    PROCEDURAL HISTORY

The Action was commenced on November 11, 2021.  ECF No. 1.  On January 31, 2022, the Court appointed Oklahoma Firefighters as Lead Plaintiff and Saxena White as Lead Counsel.  ECF Nos. 54-55.  On March 18, 2022, Plaintiff filed its consolidated complaint.  ECF No. 65.  Defendants moved to dismiss on May 3, 2022. ECF No. 78.  After the filing of Defendants' motion to dismiss, Plaintiff amended the consolidated complaint and thereafter filed the SAC on August 3, 2022. ECF Nos. 90, 92, 94, 95.

After full briefing on Defendants' motion to dismiss, on March 13, 2023, the Court granted Defendants' motion, with leave to amend. ECF No. 115. The Court held that "Plaintiff ha[d] plausibly alleged a material misrepresentation" as to the April 22, 2021 statement that "[a]dvertisers that represent a majority of [Snap's] direct response advertising revenue have successfully implemented SKAdNetwork for their Snap campaigns." *Id.*  The Court found that Plaintiff failed to adequately allege scienter. *Id.*

On April 21, 2023, Plaintiff filed the TAC.  ECF No. 120.  Defendants moved to dismiss on June 9, 2023.  ECF No. 121.  The motion was fully briefed on August 25, 2023. ECF Nos. 125-26.   On September 26, 2023, the Court dismissed the TAC. ECF No. 135.

On November 28, 2023, Plaintiff filed a notice of appeal.  ECF No. 139.  On December 20, 2024, the Ninth Circuit reversed the dismissal of the Action. *Oklahoma Firefighters Pension & Ret. Sys. v. Snap Inc.*, 2024 WL 5182634 (9th Cir. Dec. 20, 2024).

Thereafter, discovery commenced. Plaintiff served Defendants with interrogatories and numerous requests for production.  Defendants produced over 5,000 documents (more than 27,000 pages) to Plaintiff and responded to Plaintiff's interrogatories.  Plaintiff commenced reviewing and analyzing those materials. Defendants also served requests for production and interrogatories and Plaintiff and

1  its expert produced over 1,300 documents (approximately 17,000 pages). Plaintiff

2  also served 7 non-party subpoenas.

3      On May 16, 2025, Plaintiff moved for class certification.  ECF No. 167.

4  Defendants took the depositions of Plaintiff, Plaintiff's expert, Plaintiff's investment

5  consultant, Plaintiff's investment manager, and a confidential witness on July 31,

6  2025, June 18, 2025, August 18, 2025, August 26, and August 5, 2025, respectively.

7  **III.    SETTLEMENT NEGOTIATIONS**

8      The Parties engaged neutral, third-party mediators, the Honorable Layn R.

9  Phillips and Seth Aronson.  Judge Phillips and Mr. Aronson have extensive

10  experience mediating complex class action litigations. The Parties engaged in an in-

11  person mediation session on September 3, 2025 and teleconferences with Judge

12  Phillips and Mr. Aronson to resolve the Action in August and September 2025.  The

13  Parties also exchanged opening and reply mediation briefs ahead of their mediation

14  session, setting forth their respective views of the merits of the Action, along with

15  supporting evidence obtained through discovery.  At the conclusion of the mediation

16  session, Judge Phillips issued a mediator's recommendation to resolve the Action

17  for $65,000,000, which the Parties subsequently accepted, subject to the negotiation

18  of the terms of a term sheet and a stipulation of settlement and subsequent approval

19  by the Court.

20  **IV.    SETTLEMENT TERMS[3]**

21      The Settlement requires Defendants to cause to be paid $65,000,000 into the

22  Escrow Account, which amount, plus any interest accrued thereon, comprises the

23  Settlement Fund.  Notice and Administration Costs, Taxes, and Tax Expenses will

24  be funded by the Settlement Fund.  Plaintiff proposes A.B. Data, Ltd. ("A.B. Data"),

25  a nationally recognized class action settlement administrator, to be retained as

26

27

28

---

[3] The full terms and conditions of the Settlement are set forth in the Stipulation.

Claims Administrator here subject to the Court's approval.[4]  The proposed notice plan and plan for claims processing is discussed below and detailed in the Nordskog Declaration.

The Postcard Notice and Notice state that Lead Counsel will move for final approval of the Settlement and approval of an award of attorneys' fees in the amount of no more than 30% of the Settlement Amount, as well as an award of litigation expenses in an amount not to exceed $715,000, plus any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.  The Notice further explains that such fees and litigation expenses shall be paid from the Settlement Fund, and that Plaintiff intends to request an amount not to exceed $15,000, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with its representation of the Class.

Once Notice and Administration Costs, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses and any award to Plaintiff have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation (set forth in the Notice) to Authorized Claimants who are entitled to a distribution of at least $10.[5] The Plan of Allocation treats all Class Members equitably based on the timing of their purchases, acquisitions, and sales of Snap Securities.  Any amount remaining following this distribution shall then be redistributed in an economically feasible manner.  Any *de minimis* balance that remains after such reallocation(s) that is not

---

[4]  Courts including this one, have routinely approved A.B. Data as a claims administrator in securities class action settlements. *See* Nordskog Decl. ¶2; *Jiangchen v. Rentech, Inc.,* 2022 WL 22969666, at *1 (C.D. Cal. Jan. 6, 2022) (Wu, J.) ("*Rentech III*"); *Leventhal v. Chegg,* 2024 WL 6859633, at *2 (N.D. Cal. Dec. 19, 2024).

[5]  It is standard practice in securities class actions to utilize a $10 minimum check threshold.  *See, e.g., Hefler v. Wells Fargo & Co.,* 2018 WL 4207245, at *12 (N.D. Cal. Sept. 4, 2018) ("*Wells Fargo I*") (approving $10 minimum and noting that "'numerous cases . . . have approved similar or higher minimum thresholds'"); *Cheng Jiangchen v. Rentech, Inc.,* 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) (Wu, J.) ("*Rentech II*") (approving same $10 minimum threshold).

1    feasible or economical to reallocate shall be donated (subject to Court approval) to

2    the Bluhm Legal Clinic Complex Civil Litigation and Investor Protection Center at

3    Northwestern Pritzker School of Law ("IPC"),[6] a nonprofit charitable organization.

4    Through IPC, law students assist investors with limited income who have disputes

5    with stockbrokers, investment advisors, or securities firms.  *See In re Lyft, Inc. Sec.*

6    *Litig.,* 2022 WL 17740302, at *5 (N.D. Cal. Dec. 16, 2022) (approving IPC, finding

7    that IPC's "work aligns with the objectives of the federal securities laws underlying

8    this case and the interests of class members in protecting investors…there is a

9    sufficient nexus between the *cy pres* recipient and the class.").

10        The Parties have also entered into a Supplemental Agreement, which provides

11    that if, prior to the Settlement Hearing, Class Members representing a certain

12    threshold of Snap common stock request exclusion from the Class, Defendants shall

13    have the option to terminate the Settlement.  This type of agreement is "common in

14    securities fraud actions." *Jiangchen v. Rentech, Inc.,* 2019 WL 13570065, at *12

15    (C.D. Cal. June 24, 2019) ("*Rentech I*"); *see also In re ImmunityBio, Inc. Sec. Litig.,*

16    2025 WL 1686263, at *10 (S.D. Cal. June 16, 2025) ("*ImmunityBio II*") ("[T]his

17    type of agreement is common . . . Its terms are confidential 'to prevent third parties

18    from utilizing it for the improper purpose of obstructing the settlement and obtaining

19    higher payouts' for themselves at the expense of other Settlement Class members").

20        Finally, in exchange for the benefits provided under the Stipulation, Class

21    Members will release "all claims (including, but not limited to, Unknown Claims),

22    demands, losses, rights, and causes of action of any nature . . . which arise out of, or

23    relate to, directly or indirectly: (i) any of the allegations, transactions, facts, matters,

24    occurrences, representations or omissions involved, set forth, or referred to, in the

25    Complaints; and (ii) the purchase, acquisition, holding, sale, or disposition of Snap

26    common stock or options by any member of the Settlement Class during the

27

28    ───────────────────────
      [6] *See* https://www.law.northwestern.edu/legalclinic/investorprotection/

1  Settlement Class Period."  Stipulation, ¶1.39.  The proposed release is consistent

2  with release provisions approved by this Court and other courts in this Circuit. *See,*

3  *e.g.*, *Rentech I,* 2019 WL 13570065, at *10 (approving similar release); *Hefler v.*

4  *Wells Fargo & Co*., 2018 WL 6619983, at *3 (N.D. Cal. Dec. 18, 2018) ("*Wells*

5  *Fargo II*") (approving similar release).

6  **V.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

7        The Ninth Circuit maintains a "'strong judicial policy" that favors settlements,

8  particularly where complex class action litigation is concerned.  *Baten v. Michigan*

9  *Logistics, Inc.,* 2022 WL 17481068, at *4 (C.D. Cal. Dec. 6, 2022) (Wu, J.) ("*Baten*

10  *I*")*.*  "Settlement is the offspring of compromise; the question [that courts] address

11  is not whether the final product could be prettier, smarter or snazzier, but whether it

12  is fair, adequate and free from collusion."  *Baten v. Michigan Logistics, Inc.,* 2023

13  WL 2440244, at *3 (C.D. Cal. Mar. 8, 2023) (Wu, J.) ("*Baten II*").

14        Approval of a proposed class action settlement is a two-step process.  *Baten*

15  *I*, 2022 WL 17481068, at *5.  First, the Court performs a preliminary review of the

16  terms of the settlement to determine whether to send notice of the settlement to the

17  class; second, after notice and a hearing, the Court determines whether to approve

18  the settlement as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Pursuant

19  to Rule 23(e)(1), preliminary approval is appropriate where "the parties[] show[] that

20  the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and

21  (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P.

22  23(e)(1).  Rule 23(e)(2) identifies factors that courts must consider in determining

23  whether the settlement is "fair, reasonable, and adequate," including whether:

24        (A)    the class representatives and class counsel have adequately represented

25               the class;

26        (B)    the proposal was negotiated at arm's length;

27        (C)    the relief provided for the class is adequate, taking into account:

28               (i)    the costs, risks, and delay of trial and appeal;

      (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)   any agreement required to be identified under Rule 23(e)(3); and

   (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Baten I*, 2022 WL 17481068, at *5. The Court may also consider the factors identified by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998),[7] and *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946-47 (9th Cir. 2011),[8] many of which overlap with the Rule 23(e) factors. As summarized

---

[7] The *Hanlon* factors are: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026. Lead Plaintiff addresses *Hanlon* factors 1-6 in the analysis of Rule 23(e)(2). *See Loomis v. Slendertone Distrib., Inc.*, 2021 WL 873340, at *4, n.4 (S.D. Cal. Mar. 9, 2021) ("Because of the overlap . . . , the Court folds the Ninth Circuit's factors into its analysis of Rule 23(e)(2)."). Regarding *Hanlon* factor 7, no governmental body is a party to this Action. *Shvager v. ViaSat, Inc.*, 2014 WL 12585790, at *11 (C.D. Cal. Mar. 10, 2014) ("This factor is inapplicable and neutral because no government entity participated in the case."). Regarding *Hanlon* factor 8, the Class's reaction cannot be properly gauged until notice is given.

[8] None of the "subtle signs" of collusion are present here. *Bluetooth*, 654 F.3d at 947. As detailed below, the requested attorneys' fees "does not represent a disproportionate distribution for purposes of determining collusion." *See Baten I*, 2022 WL 17481068, at *6. The award of attorneys' fees is separate from the approval of the Settlement, and neither Plaintiff nor Lead Counsel may terminate the Settlement based on any ruling with respect to attorneys' fees. *See* Stipulation at ¶6.3; *Rentech I*, 2019 WL 13570065, at *9. Moreover, there is no "clear sailing" arrangement or an arrangement for unawarded fees to revert to Defendants rather than Class Members. *See* Stipulation at ¶2.3; *Rentech I*, 2019 WL 13570065, at *9.

below, and will be detailed further in Plaintiff's motion for final approval of the Settlement, all of the applicable factors support approval.

### A.    Plaintiff and Lead Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) asks whether the plaintiff and its counsel have adequately represented the class.  This factor overlaps with the Ninth Circuit's factor regarding "the extent of discovery completed and the stage of the proceedings." *Hanlon*, 150 F.3d at 1026.  As explained above, Plaintiff and Lead Counsel satisfy this factor as they have diligently prosecuted this Action for almost four years. *See supra*, §§I-II. Indeed, absent Lead Counsel's efforts, the Class would have almost certainly had no recovery for their claims. *See Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *3 (S.D.N.Y. Oct. 16, 2019) ("Absent Plaintiffs filing and winning the appeal, this dispositive decision would have resulted in zero recovery for the then putative class of allegedly aggrieved investors.").

Given Plaintiff's and Lead Counsel's demonstrated prosecution of the Action, it is without question that they have adequately represented the Class. *See Rentech II,* 2019 WL 5173771, at *5 ("Lead Counsel vigorously pursued Plaintiff's claims, including through [] rounds of motions to dismiss and amended complaints. The Court has no reason to believe that Plaintiffs' Counsel did not adequately represent the class.").

### B.    The Settlement Results from Good-Faith, Arm's-Length Negotiations

"Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *ImmunityBio II*, 2025 WL 1686263, at *7.  The fact that the Parties reached the Settlement with the benefit of discovery and after arm's-length negotiations between experienced counsel and with the assistance of acclaimed mediators creates a presumption of its fairness. *See Rentech II*, 2019 WL 5173771, at *6 ("the parties' use of mediator[s] and the fact that significant

1  discovery had been conducted 'support the conclusion that the Plaintiff was

2  appropriately informed in negotiating a settlement'").

3       Here, as detailed above, the mediation process supervised by Judge Phillips

4  and Mr. Aronson was at all times adversarial, with the mediators providing their

5  input on the pertinent issues and the strengths and challenges of the Parties' various

6  claims and defenses. Simply put, the mediators' involvement in the settlement

7  negotiations helped to ensure that the proceedings were free of collusion and undue

8  pressure and is evidence that the Settlement was reached at arm's length. *See*

9  *Voulgaris v. Array Biopharma Inc.,* 2021 WL 6331178, at *6 (D. Colo. Dec. 3, 2021)

10 ("The arm's-length nature of the parties' negotiations and the active involvement of

11 an independent mediator, such as Judge Phillips in particular, provide strong support

12 for approval of the Settlement.") (collecting cases).

13      Additionally, "'[t]he fact that experienced counsel involved in the case

14 approved the settlement after hard-fought negotiations is entitled to considerable

15 weight.'" *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *6 (C.D. Cal. July 19,

16 2024). Here, Lead Counsel is highly experienced in securities litigation and their

17 substantial experience in cases of this nature gives further weight to their judgment

18 that the Settlement is fair and reasonable. *See* ECF No. 167-4 (Saxena White firm

19 resume); *Baten I,* 2022 WL 17481068, at *5 ("Plaintiff and the interests of the

20 Settlement Class were represented in settlement negotiations by a team of attorneys

21 experienced in [] class action litigation . . . Counsel were thus well-versed in the

22 legal and factual issues," weighing in favor of preliminary approval).

23      Similarly, the fact that Plaintiff is a sophisticated institutional investor who

24 has actively overseen the Action—favored by Congress when it passed the

25 PSLRA—lends further credibility to its agreement that the Settlement be approved.

26 *See e.g., In re Veeco Instruments Inc. Sec. Litig.,* 2007 WL 4115809, at *5 (S.D.N.Y.

27 Nov. 7, 2007) ("[A] settlement reached [] under the supervision and with the

28

1    endorsement of a sophisticated institutional investor [] is entitled to an even greater

2    presumption of reasonableness").

3          **C.**     **The Relief Provided for the Class Is Adequate**

4              **1.**     **The Amount Offered in the Settlement Favors Approval**

5       "It is well-settled law that a cash settlement amounting to only a fraction of

6    the potential recovery does not per se render the settlement inadequate or unfair."

7    *Baten I*, 2022 WL 17481068, at *6; *see also Patel v. Trans Union, LLC*, 2018 WL

8    1258194, at *4 (N.D. Cal. Mar. 11, 2018) (the "court need not ask whether the

9    proposed settlement is ideal or the best possible"; rather, "it determines only whether

10    the settlement is fair, free of collusion, and consistent with the named plaintiffs'

11    fiduciary obligations").

12          Here, the $65,000,000 Settlement Amount is a tremendous result for the Class.

13    It is more than ***four times*** the $14 million median settlement amount for securities

14    class actions in 2024, and almost ***six times*** more than the $11.3 million median

15    settlement amount for federal securities class actions from 2015-2023.[9]  It is also

16    ***$55 million more*** than the $10 million median settlement for securities class actions

17    in the Ninth Circuit from 2015-2024.[10]

18          Additionally, the $65 million Settlement is well within the range of

19    reasonableness to warrant approval when considering the risks and obstacles the

20    Class would have faced had litigation continued. As detailed below, Defendants

21    would have challenged whether the alleged corrective disclosure was sufficiently

22    connected to the sole remaining false statement and thus caused any damages.

23    Indeed, Defendants would have had multiple opportunities to raise such

24    challenges—including on "price impact" grounds at class certification, as well as on

25    loss causation grounds at summary judgment and at trial.  Defendants would have

26

27    [9] Cornerstone Report at 1, 19.

28    [10] *Id.* at 1, 20.

1    argued that Plaintiff cannot show that the April 22 statement impacted Snap's stock
2    price nor that Snap ever "corrected" the statement by reporting that advertisers
3    representing a majority of its DR revenue had not, in fact, implemented SKAN as of
4    April 2021.  Regarding the October 22, 2021 stock drop, Defendants would argue
5    that Snap's disappointing financial results were impacted by factors unrelated to the
6    alleged fraud, including supply chain delays, labor shortages, and new privacy
7    initiatives announced by Apple as part of its iOS 15 update, which were unrelated to
8    SKAN.

9         Further, while Plaintiff's damages expert estimated that the maximum
10   damages that could be asserted in this Action totaled up to $3.5 billion, under that
11   scenario, the majority of the inflation in Snap's stock price during the Class Period
12   occurred following Snap's July 23, 2021 earnings release, as a result of statements
13   that the Court found were inactionable at the pleading stage.  Accordingly, Plaintiff's
14   expert estimated that the likely maximum recoverable damages that could be
15   realistically established in this case ranged from $989 million to $1.2 billion—and
16   should this case proceed to trial, these damages most likely would have been
17   significantly smaller (if any at all). Thus, the $65 million recovery constitutes
18   approximately 5.4% to 6.6% of Plaintiff's likely maximum damages. Courts have
19   routinely approved similar or lesser recoveries as fair and reasonable. *See, e.g.,*
20   *HyreCar*, 2024 WL 3504234, at *8 (recovery of 2% "is in line with percentage
21   recoveries other courts have found to be fair and adequate" in securities class action
22   cases); *Ziegler*, 2024 WL 1470532, at *5 (approving securities class action
23   settlement representing "~1% of the total maximum potential damages").

24        Accordingly, it is extremely unlikely that the Class could have recovered
25   anything close to the Settlement Amount—much less maximum damages—had
26   litigation continued.  *See In re ImmunityBio, Inc. Sec. Litig.,* 2025 WL 834767, at
27   *10 (S.D. Cal. Mar. 17, 2025) ("*ImmunityBio I*") ("Although the Settlement is only
28   a portion of Defendant's maximum potential exposure according to Plaintiff's

calculations, the relief appropriately accounts for the not-insubstantial risk that Plaintiff and the class would recover nothing on some or all claims").

### 2. The Settlement Weighs the Strength of Plaintiff's Claims with the Risks of Continuing Litigation

"In assessing the 'costs, risks, and delay of trial and appeal,' Fed R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate 'the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial.'" *Tanner v. Plavan Com. Fueling, Inc*., 2025 WL 2231304, at *3 (S.D. Cal. Aug. 4, 2025). "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Elkies v. Johnson & Johnson Servs., Inc.*, 2020 WL 10055593, at *4 (C.D. Cal. June 22, 2020) (Wu, J.). Securities fraud class actions such as this one "are complex cases that are time-consuming and difficult to prove." *Rentech II*, 2019 WL 5173771, at *6; .[11] Accordingly, the uncertainty created by these circumstances weighs in favor of approval.

"In this case, continued litigation involved substantial risk for Plaintiff[]. This Court has already granted [two] motions to dismiss." *Rentech II*, 2019 WL 5173771, at *6. Indeed, at the pleading stage, this Court dismissed 17 of the 18 alleged misstatements as inactionable, and with respect to the other alleged misstatement, the Court found that Plaintiff had not adequately alleged scienter. The risk of establishing liability for this sole surviving statement weighs in favor of the Settlement. *See Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *5 (N.D. Cal. May 6, 2024) (finding litigation risks weighed in favor of settlement where "the

---

[11] *See also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in defendants' favor); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict in defendants' favor).

Court already granted Defendants' motions to dismiss the majority of Plaintiffs' claims and that th[e] case has been reduced to two narrow statements").

While Plaintiff remained confident in its ability to ultimately succeed at trial, it would be required to prove all elements of its claims to prevail, while Defendants needed to succeed on only one defense to potentially defeat the entire Action. *See, e.g.*, *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *4 (S.D. Cal. June 6, 2022)("Plaintiff may have also faced difficulty establishing necessary elements of falsity or scienter at the summary judgment and trial stage…[C]ourts have recognized that a defendant's state of mind in a securities case is the most difficult element of proof and one that is rarely supported by direct evidence"). Among other things, Defendants likely would argue that the remaining statement by Gorman was not false because of the statement's plain meaning, its surrounding context, and its pre-ATT timing.  The subject matter of this case was technical and factually complex, creating hurdles to proving scienter, as evidenced at the motion to dismiss stage.  Defendants would also likely have argued that Gorman did not act with scienter when she made the April 22 statement, because she repeatedly disclosed that ATT could have an impact on Snap's business, had no financial motive, and scienter becomes more difficult to prove when the allegedly misleading statement is subject to multiple interpretations.  Defendants likely also would have challenged allegations attributed to confidential witnesses, including the basis that the witnesses had for making those allegations.

Defendants likely would have also vigorously contested loss causation, price impact, and damages at class certification, summary judgment, and trial. *HyreCar*, 2024 WL 3504234, at *8 ("'In any securities litigation case, it is difficult for plaintiff to prove loss causation and damages at trial.'"). For example, Defendants likely would have argued that the April 22 statement had no price impact, the alleged October 22, 2021 corrective disclosure was not corrective of any misstatement, and the alleged disclosure contained other negative news that Plaintiff would need to

1    disaggregate to identify any compensable losses.  Defendants also would likely have

2    presented evidence from an expert who would opine that the Class's damages were

3    small or non-existent.  As such, the trial likely would involve "'a battle of experts,'"

4    with "'no guarantee whom the jury would believe,'" raising the possibility that

5    damages would be materially reduced or eliminated.  *Davis v. Yelp, Inc.*, 2022 WL

6    21748777, at *4 (N.D. Cal. Aug. 1, 2022).

7              In sum, Defendants had plausible defenses that could have ultimately left

8    Class Members with a reduced or non-existent recovery, which weighs in favor of

9    approving the Settlement.  Indeed, absent settlement now, the Parties would face

10   years litigating this Action to a final resolution, including further discovery, class

11   certification, dispositive motions, trial, and likely post-trial appeals.  *See Rentech II*,

12   2019 WL 5173771, at *6 (addressing another securities class action in which

13   shareholders had still not received any recovery "two years after jury verdict in

14   plaintiffs' favor and ten years after the case was filed").

15                  **3.    The Proposed Method for Distributing Relief Is Effective**

16             Under Rule 23(e)(2), courts consider "the effectiveness of [the] proposed

17   method of distributing relief to the class."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  Here, the

18   method for processing Class Members' claims and distributing relief to eligible

19   claimants include well-established, effective procedures for processing claims

20   submitted by Class Members.  *See* Nordskog Decl. at ¶¶17-24.  A.B. Data, if

21   approved by the Court as Claims Administrator, will process claims under the

22   supervision of Lead Counsel, allow claimants an opportunity to cure any deficiencies

23   in their Claims or request the Court to review a denial of their Claims, and, lastly,

24   mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the

25   Plan of Allocation), after Court approval.  The claims administration process being

26   proposed here is standard in securities class action settlements and has long been

27   found to be effective.  *See, e.g.*, *Wells Fargo II*, 2018 WL 6619983, at *7 ("The

28   Court further finds that the proposed claims process provides an effective method of

implementing that plan by ensuring that the claimant provides sufficient information to calculate the recognized loss amount.  Therefore, this factor weighs in favor of approval."); *HyreCar*, 2024 WL 3504234, at *9 ("The court finds that the effectiveness of the proposed method of distribution, involving a claims administrator and *pro rata* relief based on a claimant's demonstrable injury, weighs in favor of approving the Proposed Settlement Agreement.").

### 4.    Lead Counsel's Fee and Expense Request Is Fair and Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  Lead Counsel intends to seek an award of attorneys' fees of no more than 30% of the Settlement Amount, and up to $715,000 in litigation expenses, plus any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund. *Rentech II*, 2019 WL 5173771, at *10 ("nearly all common fund awards range around 30%"); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *9 (S.D. Cal. Nov. 30, 2021) ("District courts in this [C]ircuit have routinely awarded fees of one-third of the common fund or higher").  This request is consistent with awards in similar complex class action cases in this Circuit and across the country.  *See, e.g.*, *Ferris v. Wynn Resorts Ltd.*, 2025 WL 2308698, at *1 (D. Nev. Jan. 31, 2025) (granting one-third of $70 million settlement); *Roberts v. Zuora*, 2024 WL 6847397, at *1 (N.D. Cal. Jan. 16, 2024) (granting 30% of $75.5 million settlement); *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, 2022 WL 2093054, at *1 (D. Minn. June 10, 2022) (awarding one-third of $63 million settlement).

### 5.    The Parties Have No Other Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement.  As detailed above, the Parties have entered into a standard, confidential supplemental agreement pursuant to which Defendants may terminate the Settlement if requests for exclusion from the Class reach a certain threshold—generally called a "blow

provision." *See* Stipulation, ¶7.3.  Such an agreement is kept confidential to prevent
objectors from threatening to trigger the blow provision to obtain self-interested
payments at the expense of the Class and has no negative impact on fairness.  *See,
e.g.*, *Wells Fargo I*, 2018 WL 4207245, at *7 (finding "compelling reasons to keep
this information confidential in order to prevent third parties from utilizing it for the
improper purpose of obstructing the settlement").  The Parties are willing to submit
the agreement for *in camera* review should the Court so request.

### 6.      All Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats
class members equitably relative to one another.  Here, the proposed Plan of
Allocation is fair, reasonable, and adequate because it does not treat Plaintiff (or any
other Class Member) preferentially.  The Plan of Allocation, which is set out in the
Notice, explains how the Settlement proceeds will be distributed among Authorized
Claimants.  Each eligible Class Member, including Plaintiff, will be subject to the
same formulas for distribution of the Settlement. *See Rentech II*, 2019 WL 5173771,
at *7 ("[T]he [c]ourt sees no significant indication of preferential treatment" where
the "'[n]et [s]ettlement [f]und will be distributed to [a]uthorized [c]laimants on a *pro
rata* basis based on the relative size of their [r]ecognized [c]laims.'").  Courts have
found similar plans that award *pro rata* shares of a settlement fund to each class
member to be fair and reasonable.  *See, e.g.*, *HyreCar Inc.,* 2024 WL 3504234, at
*10; *ImmunityBio II*, 2025 WL 1686263, at *10.[12]

### VI.     THE CLASS SHOULD BE CERTIFIED

Defendants have agreed, for the sole purpose of settlement, to certification of
the following Class: "all Persons or entities who purchased or otherwise acquired
Snap publicly traded securities or call options, or sold Snap put options, between

---

[12] Pursuant to the PSLRA, Plaintiff will separately seek reimbursement of costs
(including lost wages) incurred as result of its representation of the Class in an
amount not to exceed $15,000. *See* 15 U.S.C. §78u-4(a)(4).

February 5, 2021 and October 21, 2021, inclusive and were damaged thereby." The proposed Class is the same as that alleged in the SAC and satisfies all of the applicable requirements of Rule 23(a) and Rule 23(b)(3).[13]

### A.    Numerosity

"Courts generally find that the numerosity requirement is met in securities fraud suits involving nationally traded stocks." *In re Snap, Inc. Sec. Litig.*, 334 F.R.D. 209, 226 (C.D. Cal. 2019). Because Snap was publicly traded on the NYSE, Plaintiff estimates that the Class will encompass "'hundreds, if not thousands'" of putative class members. *HyreCar*, 2024 WL 3504234, at *12. "Given the substantial scope of the expected class size in this case" (*id.*), Plaintiff contends that joinder of all class members would be impracticable, and therefore, that the numerosity requirement is met.

### B.    Commonality

A class action requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *HyreCar*, 2024 WL 3504234, at *12. "'So long as there is "even a single common question," a would-be class can satisfy the commonality requirement of Rule 23(a)(2).'" *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, 2025 WL 1243818, at *3 (N.D. Cal. Apr. 25, 2025). Plaintiffs in securities fraud litigation generally satisfy this prerequisite "'very easily.'" *Brown v. China Integrated Energy Inc.*, 2015 WL 12720322, at *14 (C.D. Cal. Feb. 17, 2015). Here, too, this Action presents numerous factual questions common to the Class, including "whether [the] publicly-traded company omitted or misrepresented material facts to shareholders

---

[13] After the Court found falsity only for the April 2021 statement, the TAC had a shorter Class Period of April 23, 2021 through October 21, 2021. However, the Parties have agreed, for settlement purposes only, to settle the longer class period alleged in the SAC, which is common in securities class actions. *See, e.g., In re FibroGen. Inc. Sec. Litig.*, 2024 WL 6859589, at *1 (approving settlement class period longer than actionable misstatements); *Indiana Pub. Ret. Sys. v. Cartwright*, 2023 WL 12166203, at *1 (M.D. Tenn. Oct. 18, 2023).

1    and whether class members had sustained damages by the omissions." *Rentech I*,

2    2019 WL 13570065, at *5.

3        **C.    Typicality**

4        Under Rule 23(a)(3)'s "permissive standard" for typicality, "representative

5    claims are 'typical' if they are reasonably coextensive with those of absent class

6    members; they need not be substantially identical." *Snap*, 334 F.R.D. at 226.  The

7    typicality element is met here.  As with the other Class Members, Plaintiff alleged

8    that it purchased "securities during the Class Period at prices artificially inflated by

9    Defendants' misrepresentations or omissions and was damaged upon the disclosures

10    of those misrepresentations and/or omissions." *ImmunityBio I*, 2025 WL 834767, at

11    *5.

12        **D.    Adequacy**

13        Representative parties must also fairly and adequately protect the interests of

14    the class. Fed. R. Civ. P. 23(a)(4).  As detailed above, Plaintiff and Lead Counsel

15    readily satisfy the adequacy requirement.  First, based upon its purchases of Snap

16    securities during the Class Period and their alleged losses, Plaintiff's interests are

17    directly aligned with the interests of other Class Members, who were allegedly

18    injured by the same alleged statements and omissions.  Second, there are no conflicts

19    of interest. *Rentech I*, 2019 WL 13570065, at *6.  As discussed above, Plaintiff has

20    also retained highly proficient counsel.  Plaintiff and Lead Counsel have

21    demonstrated their willingness to commit considerable resources to prosecuting this

22    Action, and have vigorously represented the Class's interests.

23        **E.    The Requirements of Rule 23(b)(3) Are Also Met**

24        Rule 23(b)(3) requires that common questions of law or fact predominate over

25    individual questions, and that a class action is superior to other available methods of

26    adjudication.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809

27    (2011).  Here, there are numerous common questions that predominate, including

28    whether Defendants' statements were false or misleading, whether Defendants acted

1    with scienter, and whether, and to what extent, Class Members suffered damages

2    caused by the revelation of Defendants' alleged fraud.  Moreover, a class action is

3    the superior method available to fairly and efficiently adjudicate this Action.  The

4    superiority of class actions to resolve the claims of a large, geographically dispersed

5    class of investors in securities fraud cases is well recognized.  *See Amchem Prods.,*

6    *Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Rentech I,* 2019 WL 13570065, at \*7.

7    **VII.    NOTICE TO THE CLASS IS WARRANTED**

8         To comport with due process, "[t]he Court 'must direct notice in a reasonable

9    manner to all class members who would be bound by the proposal.'"  *Fleming v.*

10    *Impax Lab'ys Inc.*, 2022 WL 2789496, at \*5 (N.D. Cal. July 15, 2022).  Additionally,

11    the "notice must 'clearly and concisely state in plain, easily understood language'

12    the nature of the action, the class definition, and the class members' right to exclude

13    themselves from the class."  *Id.*

14         As outlined in the agreed-upon proposed Preliminary Approval Order, Lead

15    Counsel will cause the Claims Administrator to notify Class Members of the

16    Settlement by emailing, or mailing by first class mail where no email is available,

17    copies of the Postcard Notice (Exhibit A-4 to the Stipulation) to all Class Members

18    who can be identified with reasonable effort, as well as to the thousands of brokerage

19    firms and other nominees who regularly act as nominees for beneficial purchasers

20    of stock. *See* Nordskog Decl. at ¶¶6-16.  Contemporaneously with the emailing or

21    mailing of the Postcard Notice, as applicable, copies of the (long-form) Notice

22    (Exhibit A-1 to the Stipulation) and the Claim Form (Exhibit A-2 to the Stipulation)

23    will be posted on the Settlement Website, from which copies of the Notice and Claim

24    Form can be downloaded, and where claims can be submitted online.  The Claims

25    Administrator will also mail copies of the Notice and/or Claim Form upon request.

26    The Summary Notice (Exhibit A-3 to the Stipulation) will also be published in *The*

27    *Wall Street Journal* and over *PR Newswire*.

28

The Postcard Notice, Summary Notice, and long-form Notice will advise Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for an award of attorneys' fees and litigation expenses. *See generally* Stipulation, Exs. A-1, A-3, A-4. They also will provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for opting out of the Class, for objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and litigation expenses, and for submitting a Claim Form. *Id.* Courts regularly hold that this form and manner of providing notice to the Class satisfies the requirements of due process, Rule 23, and the PSLRA. *See, e.g., Rentech II,* 2019 WL 5173771, at *8 (approving similar notice plan); *Utne v. Home Depot U.S.A., Inc.*, 2018 WL 11373654, at *1 (N.D. Cal. Aug. 21, 2018) ("[D]irect mail postcard notice supplemented with additional information accessible via the internet fully meets the requirements of Rule 23.").

## VIII. PROPOSED SCHEDULE OF EVENTS

The Parties respectfully submit that the proposed dates are similar to other settlement schedules in this Court and this District. *See Rentech I,* 2019 WL 13570065, at **13-14 (schedule with similar timeline); *Chegg*, 2024 WL 6859633, at *7 (similar settlement timeline).

| Event | Proposed Deadline |
|---|---|
| Deadline for mailing or emailing the Postcard Notice (Preliminary Approval Order ¶10) | Not later than 20 business days after entry of Preliminary Approval Order ("Notice Date") |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶11) | Not later than 10 business days after the Notice Date |
| Deadline for receipt of Claim Forms (Preliminary Approval Order ¶15) | 120 calendar days after the Notice Date |
| Deadline for filing opening papers in support of final approval of Settlement, Plan of Allocation, and attorneys' fees and reimbursement of litigation | 42 calendar days prior to the Final Approval Hearing |

| | |
|---|---|
| expenses (Preliminary Approval Order ¶22) | |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶¶19-20) | 28 calendar days prior to Final Approval Hearing |
| Deadline for filing reply papers and submitting proof of the mailing, emailing, and publication of notice to Class Members (Preliminary Approval Order ¶¶12, 22) | 14 calendar days prior to the Final Approval Hearing |
| Final Approval Hearing (Preliminary Approval Order ¶5) | At least 100 calendar days after entry of Preliminary Approval Order |

## IX.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order.

Dated: October 27, 2025

SAXENA WHITE, P.A.

/s/ Lester R. Hooker
Maya Saxena (*pro hac vice*)
Joseph E. White, III
Lester R. Hooker (SBN 241590)
Dianne M. Pitre (SBN 286199)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
E-mail: msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com
dpitre@saxenawhite.com

SAXENA WHITE P.A.
Steven B. Singer (*pro hac vice*)
Sara DiLeo (*pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
E-mail: ssinger@saxenawhite.com
sdileo@saxenawhite.com

SAXENA WHITE P.A.
David R. Kaplan (SBN 230144)
Emily R. Bishop (SBN 319383)
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E-mail: dkaplan@saxenawhite.com
Ebishop@saxenawhite.com

*Lead Counsel for Lead Plaintiff and the
Class*

**BIENERT KATZMAN LITTRELL
WILLIAMS LLP**
John L. Littrell (SBN 221601)
jlittrell@bklwlaw.com
Michael R. Williams (SBN 192222)
mwilliams@bklwlaw.com
360 E. 2nd Street, Suite 625
Los Angeles, CA 90012
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Liaison Counsel for Lead Plaintiff and the
Class*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Lead Plaintiff, certifies that this brief contains 6,978 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 27, 2025

*/s/ Lester R. Hooker*
Lester R. Hooker

1
2
3

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 10-07**

4

I HEREBY CERTIFY under penalty of perjury that, on October 27, 2025, I

5

authorized the electronic filing of the foregoing with the Clerk of Court using the

6

CM/ECF system, which will send a notice of electronic filing to all counsel or parties

7

of record.

8

Executed on October 27, 2025.

9

*/s/ Lester R. Hooker*

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28