# EXHIBIT 1

**SAXENA WHITE P.A.**
Maya Saxena
msaxena@saxenawhite.com
Joseph E. White, III
jwhite@saxenawhite.com
Lester R. Hooker (241590)
lhooker@saxenawhite.com
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

*Lead Counsel for Lead Plaintiff
and the Class*

*Additional Counsel listed on signature page*

**BIENERT KATZMAN
LITTRELL WILLIAMS LLP**
John L. Littrell (221601)
jlittrell@bklwlaw.com
Michael R. Williams (192222)
mwilliams@bklwlaw.com
360 E. 2nd Street, Suite 625
Los Angeles, CA 90012
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Liaison Counsel for Lead Plaintiff
and the Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| KELLIE BLACK, individually and on behalf of all others similarly situated, | No. 2:21-cv-08892-GW (RAO) |
| Plaintiff, | CLASS ACTION |
| vs. | **STIPULATION OF SETTLEMENT** |
| SNAP INC., EVAN SPIEGEL, and JEREMI GORMAN, | |
| Defendants. | |

This Stipulation of Settlement (the "Stipulation") is made and entered into by and between: (i) lead plaintiff Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters," "Plaintiff," or "Lead Plaintiff"), on behalf of itself and the Class (defined in ¶1.7, *infra*); and (ii) defendants Snap Inc. ("Snap" or the "Company"), Jeremi Gorman, and Evan Spiegel (the "Individual Defendants," together with Snap, "Defendants," and, together with Lead Plaintiff and Snap, the "Parties" or the "Settling Parties"), by and through their respective counsel of record in the above-captioned litigation (the "Action") pending in the United States District Court for the Central District of California (the "Court"). This Stipulation is intended by the Parties to fully, finally, and forever compromise, resolve, discharge, dismiss with prejudice, and release the Released Claims (defined in ¶1.39, *infra*), upon and subject to the terms and conditions hereof, and subject to the approval of the Court.

All capitalized terms not otherwise defined shall have the meanings ascribed to them in Section IV.1., below, entitled "Definitions."

## I.    THE LITIGATION

The original securities class action complaint in the Action was filed in this District on November 11, 2021. ECF No. 1. On January 10, 2022, Plaintiff moved for an order appointing Oklahoma Firefighters as lead plaintiff in the case and approving its selection of lead counsel for the class. ECF No. 28. On January 31, 2022, the Court granted Plaintiff's motion, appointing Oklahoma Firefighters as Lead Plaintiff and Saxena White P.A. as Lead Counsel. ECF Nos. 54-55.

On March 18, 2022, Plaintiff filed its consolidated complaint alleging that Defendants made misrepresentations concerning, among other things, the potential impact of certain Apple privacy changes on Snap's business. ECF No. 65. Defendants moved to dismiss on May 3, 2022. ECF No. 78. After the filing of Defendants' motion to dismiss, Plaintiff informed Defendants that it intended to

1   amend the consolidated complaint and Plaintiff thereafter filed a second amended

2   complaint ("SAC") on August 3, 2022. ECF Nos. 90, 92, 94, 95.

3       After full briefing on Defendants' motion to dismiss, on March 13, 2023, the

4   Court granted Defendants' motion to dismiss, with leave to amend.  ECF No. 115.

5   The Court held that all but one alleged misstatement was not adequately pleaded to

6   be an actionable misstatement but that "Plaintiff ha[d] plausibly alleged a material

7   misrepresentation" as to the April 22, 2021 statement that "[a]dvertisers that

8   represent a majority of [Snap's] direct response advertising revenue have

9   successfully implemented SKAdNetwork for their Snap campaigns." *Id.*  The Court

10  found that Plaintiff failed to adequately allege scienter as to that statement.  *Id.*

11      On April 21, 2023, Plaintiff filed the third amended complaint ("TAC").  ECF

12  No. 120.  Defendants moved to dismiss on June 9, 2023.  ECF No. 121.  Plaintiff

13  filed its corrected opposition to Defendants' motion to dismiss on August 1, 2023,

14  and Defendants replied on August 25, 2023. ECF Nos. 125-26.  On September 26,

15  2023, the Court dismissed the TAC.  ECF No. 135.

16      On November 28, 2023, Plaintiff filed a notice of appeal.  ECF No. 139.  After

17  full briefing, oral argument was held on December 5, 2024.  *Oklahoma Firefighters*

18  *Pension & Ret. Sys. v. Snap Inc., et al.,* No. 23-3932, ECF No. 53 (9th Cir. Dec. 5,

19  2024).   On December 20, 2024, the Ninth Circuit reversed the District Court's

20  dismissal of the Action.  *See Oklahoma Firefighters Pension & Ret. Sys. v. Snap*

21  *Inc.*, No. 23-3932, 2024 WL 5182634 (9th Cir. Dec. 20, 2024).

22      Following the Ninth Circuit's reversal, discovery commenced.  Plaintiff

23  served Defendants with interrogatories and numerous requests for production.

24  Defendants produced over 5,000 documents (comprising more than 27,000 pages)

25  to Plaintiff in response to Plaintiff's requests for production, including documents

26  concerning the origin of and basis for the April 22 statement, and responded to

27  Plaintiff's interrogatories.   Plaintiff commenced reviewing and analyzing those

28  materials.  Defendants also served requests for production and interrogatories and

1    Plaintiff and its expert produced over 1,300 documents (comprising about 17,000

2    pages) in response to Defendants' discovery requests. Plaintiff also served seven (7)

3    non-party subpoenas.  Defendants served non-party subpoenas on Plaintiff's external

4    investment manager, investment consultant, and confidential witnesses cited in the

5    TAC.  These third parties collectively produced more than 3,500 documents.

6         On May 16, 2025, Plaintiff moved for class certification.  ECF No. 167.

7    Defendants took the depositions of Plaintiff, Plaintiff's expert, investment

8    consultant, and investment manager, and a confidential witness cited in the

9    complaints on July 31, 2025, June 18, 2025, August 18, 2025, August 26, 2025, and

10   August 5, 2025, respectively.

11        During the course of the Action, the Parties engaged neutral, third-party

12   mediators, the Honorable Layn R. Phillips and Seth Aronson of Phillips ADR

13   Enterprises, P.C.  Judge Phillips and Mr. Aronson have extensive experience

14   mediating complex class action litigations such as this Action.  The Parties engaged

15   in an in-person mediation session and teleconferences with Judge Phillips and Mr.

16   Aronson in an effort to resolve the Action in August and September 2025.  The

17   Parties also exchanged opening and reply mediation briefs ahead of their in-person

18   mediation session, setting forth their respective arguments concerning their

19   respective views of the merits of the Action.  At the conclusion of the Parties'

20   mediation session on September 3, 2025, Judge Phillips issued a mediator's

21   recommendation to resolve the Action for $65,000,000, which the Settling Parties

22   subsequently accepted as an agreement in principle, subject to the negotiation of the

23   terms of a term sheet and a stipulation of settlement, and subsequent approval by the

24   Court.  This Stipulation (together with the Exhibits hereto) reflects the final and

25   binding agreement of the Parties.

26   **II.    LEAD PLAINTIFF'S CLAIMS AND BENEFITS OF SETTLEMENT**

27        Lead Plaintiff believes that the claims asserted in the Action have merit and

28   that the evidence and record developed to date support the claims asserted.

Nonetheless, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action through trial and any possible appeals. Lead Plaintiff and Lead Counsel have also considered the uncertain outcome and risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. Lead Counsel is mindful of the inherent problems of proof and the possible defenses to the claims alleged in the Action. Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class in light of the circumstances present. Based on their evaluation, Lead Plaintiff and Lead Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of the Class.

## III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied, and continue to deny, that they have engaged in any wrongdoing of any kind, including, without limitation, that they committed any act or omission giving rise to any liability or violation of law. Specifically, Defendants expressly have denied, and continue to deny, each and all of the claims alleged by Lead Plaintiff in the Action, along with all the charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Defendants also have denied, and continue to deny, among other allegations, the allegations that Lead Plaintiff or the Class have suffered any damages, or that Lead Plaintiff or the Class were harmed by the conduct alleged in the Action or that could have been alleged as part of the Action. Defendants have asserted, and continue to assert, that their conduct was at all times proper and in compliance with all applicable provisions of law, and believe the evidence developed to date supports their position that they acted properly at all times, and that the Action is without merit. Defendants maintained, and continue to maintain, that they have meritorious defenses to all claims alleged in the Action.

As set forth below, neither the Settlement nor any of the terms of this Stipulation shall be construed as, deemed to be evidence of, or constitute an admission or finding of any fault, liability, wrongdoing, or damage whatsoever or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants are entering into this Stipulation to eliminate the burden and expense of further litigation. Defendants have determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff (for itself and members of the Class), on the one hand, and Defendants, on the other hand, by and through their respective counsel of record, that, subject to the approval of the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties from the Settlement set forth herein, the Released Claims and the Released Defendants' Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice as to Plaintiff and Defendants, with each party to bear its own fees, costs, and expenses (except as expressly provided by this Stipulation), upon and subject to the terms and conditions of this Stipulation, as follows.

### 1.    Definitions

As used in this Stipulation the following terms[1] have the meanings specified below:

1.1    "Action" or "Litigation" means *Black v. Snap Inc., et al.*, No. 2:21-cv-08892 (C.D. Cal.), and all prior proceedings therein, including, but not limited to,

---

[1] Unless otherwise noted, these definitions apply to the singular and plural versions of these defined terms and vice versa. All terms used in the singular apply to plural terms.

1    *Buscaglia v. Snap Inc.*, *et al.*, No. 2:22-cv-00175 (C.D. Cal.) which was consolidated

2    with *Black v. Snap Inc., et al.*, No. 2:21-cv-08892 (C.D. Cal.).

3        1.2     "Appellate Counsel" means Joseph Hage Aaronson LLC.

4        1.3     "Authorized Claimant" means any member of the Class who submits a

5    valid Proof of Claim and Release that is approved by the Claims Administrator or

6    Court for payment from the Net Settlement Fund.

7        1.4     "Claim" means a Claim Form or electronic claim submitted by a

8    Claimant or Settlement Class Member to the Claims Administrator.

9        1.5     "Claimant" means a Person or entity who or which submits a Claim to

10    the Claims Administrator seeking to be eligible to share in the proceeds of the Net

11    Settlement Fund.

12        1.6     "Claims Administrator" means A.B. Data, Ltd., the firm retained by

13    Lead Counsel as claims administrator for purposes of this Settlement.

14        1.7     "Class" or "Settlement Class" means all Persons or entities who

15    purchased or otherwise acquired Snap publicly traded securities or call options, or

16    sold Snap put options, between February 5, 2021 and October 21, 2021, inclusive.

17    Excluded from the Class are: (1) Defendants, (2) the officers and directors of Snap

18    during the Class Period, (3) the immediate family members of any Defendant or any

19    officer or director of Snap during the Class Period, and (4) any entity that any

20    Defendant owns or controls, or owned or controlled, during the Class Period.  Also

21    excluded from the Class are those Persons and entities who timely and validly

22    request exclusion from the Class pursuant to the Notice and where such exclusion is

23    accepted by the Court.  For the avoidance of doubt, the Settlement Class includes

24    Elias Guerra and those individuals and entities he purports to represent in his

25    capacity as Securityholder Representative in the matter captioned *Guerra v. Snap*

26    *Inc.*, C.A. No. 2024-1009-JTL (Del. Ch.).

27        1.8     "Class Member" or "Settlement Class Member" means any Person who

28    falls within the definition of the Class as set forth in ¶ 1.7 of this Stipulation.

1.9    "Class Period" or "Settlement Class Period" means the time between February 5, 2021 and October 21, 2021, inclusive.

1.10    "Complaints" means the Consolidated Class Action Complaint for Violations of the Federal Securities Laws filed in the Action on March 18, 2022 (ECF No. 65), the Second Amended Class Action Complaint for Violations of the Federal Securities Laws filed in the Action on August 3, 2022 (ECF No. 94-1), and the Third Amended Class Action Complaint for Violation of the Federal Securities Laws filed in the Action on April 21, 2023 (ECF No. 120).

1.11    "Court" means the United States District Court for the Central District of California.

1.12    "D&O Insurers" means Defendants' directors' and officers' liability insurance carriers and any and all of their reinsurers.

1.13    "Defendants" means Snap and the Individual Defendants.

1.14    "Defendants' Counsel" means Paul, Weiss, Rifkind, Wharton & Garrison LLP, Bird, Marella, Rhow, Lincenberg, Drooks, & Nessim LLP, and all other legal counsel who, at the direction and under the supervision of Defendants, performed services on behalf of the Defendants in the Action.

1.15    "Effective Date" means the first date by which all of the events and conditions specified in ¶7.1 of this Stipulation have been met and have occurred.

1.16    "Escrow Account" means the account maintained at Citibank, N.A., wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Counsel.

1.17    "Escrow Agent" means Citibank, N.A., the independent third-party entity selected by Lead Counsel.

1.18    "Excluded Claims" means (i) any claims asserted by the Company, including in a derivative action based on similar allegations as those set forth in the Complaints; and (ii) any claims of any Person or entity who or which submits a request for exclusion that is accepted by the Court.

1.19 "Final" with respect to the Judgment approving this Stipulation, substantially in the form of Exhibit B attached hereto, or any other court order, means: (i) the expiration of the time to file a motion to alter or amend the Judgment without any such motion having been filed; (ii) the time in which to appeal the Judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such manner as to permit the consummation of the Settlement, substantially in accordance with the terms and conditions of this Stipulation. Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to: (i) attorneys' fees, costs, or expenses or an award to Lead Plaintiff; (ii) the Plan of Allocation (as submitted or subsequently modified); or (iii) the procedures for determining Authorized Claimants' recognized claims, shall not in any way delay, affect, or preclude the time set forth above for the Judgment to become Final, or otherwise preclude the Judgment from becoming Final.

1.20 "Judgment" means the judgment and order of dismissal with prejudice to be rendered by the Court upon approval of the Settlement, substantially in the form attached hereto as Exhibit B, as well as any form of final judgment that may be entered by the Court in a form other than the form attached hereto as Exhibit B and where none of the Settling Parties elects to terminate this Settlement by reason of such variance, consistent with the terms of this Stipulation.

1.21 "Immediate Family" with respect to the Individual Defendants means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law. As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

1    1.22    "Individual Defendants" means Jeremi Gorman and Evan Spiegel.

2    1.23    "Lead Counsel" means Saxena White P.A.

3    1.24    "Lead Plaintiff" or "Plaintiff" means Oklahoma Firefighters Pension

4    and Retirement System.

5    1.25    "Liaison Counsel" means Bienert Katzman Littrell Williams LLP.

6    1.26    "Litigation Expenses" means costs and expenses incurred in connection

7    with commencing, prosecuting and settling the Action (which may include the

8    reimbursement of time, costs and expenses of Lead Plaintiff directly related to its

9    representation of the Settlement Class as permitted by the PSLRA), for which Lead

10    Counsel intends to apply to the Court for reimbursement from the Settlement Fund.

11    1.27    "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes

12    and Tax Expenses; (ii) any Notice and Administration Costs; (iii) any Litigation

13    Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and

14    (v) other Court-approved deductions.

15    1.28    "Notice" means the Notice of: (i) Pendency of Class Action,

16    Certification of Class, and Proposed Settlement and Plan of Allocation;

17    (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees

18    and Litigation Expenses, substantially in the form attached hereto as Exhibit A-1, or

19    in such other form as may be approved in writing by all of the Parties acting by and

20    through their respective counsel of record in the Action and approved by the Court,

21    which shall be made available online at a website maintained by the Claims

22    Administrator (the "Settlement Website") or mailed to Class Members upon request.

23    1.29    "Notice and Administration Costs" means the costs, fees and expenses

24    that are actually incurred by the Claims Administrator and/or Lead Counsel in

25    connection with: (i) providing notice of the Settlement to the Settlement Class

26    including through distribution of the Notice, Summary Notice, and Postcard Notice

27    by mail, publication, and other means of locating potential Settlement Class

28    Members; and (ii) administering the Settlement, including, but not limited to, the

1  Claims process, as well as the costs, fees, and expenses incurred in connection with

2  the Escrow Account.

3      1.30   "Parties" means Defendants and Lead Plaintiff, on behalf of itself and

4  the Settlement Class.  "Party" means one of the Parties.

5      1.31   "Person" means an individual, corporation, partnership, limited

6  partnership, association, joint stock company, estate, legal representative, trust,

7  unincorporated association, government or any political subdivision or agency

8  thereof, and any business or legal entity and his, her, or its spouses, heirs,

9  predecessors, successors, representatives, or assignees.

10      1.32   "Plaintiff's Counsel" means Lead Counsel, Liaison Counsel, Appellate

11  Counsel, and all other legal counsel who, at the direction and under the supervision

12  of Lead Counsel, performed services on behalf of the Settlement Class in the Action.

13      1.33   "Plan of Allocation" means a plan or formula of allocation of the Net

14  Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized

15  Claimants.  Any Plan of Allocation is not part of this Stipulation and the Released

16  Defendants Parties shall have no responsibility or liability with respect to the Plan

17  of Allocation.  Any order or proceeding relating to the Plan of Allocation shall not

18  operate to terminate or cancel this Stipulation or affect the finality of the Judgment

19  or any other orders entered by the Court pursuant to this Stipulation.

20      1.34   "Postcard Notice" means the Postcard Notice of: (i) Pendency of Class

21  Action, Certification of Class, and Proposed Settlement and Plan of Allocation; (ii)

22  Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and

23  Litigation Expenses, substantially in the form attached hereto as Exhibit A-4, or in

24  such other form as may be approved in writing by all of the Parties acting by and

25  through their respective counsel of record in the Action and approved by the Court,

26  which is to be mailed or emailed to Class Members.  The Postcard Notice shall direct

27  Class Members to the Settlement Website to access the Claim Form and the Notice,

28  which shall contain the general terms of the Settlement set forth in this Stipulation,

1   the proposed Plan of Allocation, the general terms of the fee and expense application,

2   and the date of the Settlement Hearing.

3       1.35   "Preliminary Approval Order" means the order to be entered by the

4   Court preliminarily approving the Settlement and directing that Postcard Notice of

5   Settlement be provided to the Settlement Class, in the form attached hereto as

6   Exhibit A, or in such other form as may be approved by the Court.

7       1.36   "Proof of Claim and Release" or "Claim Form" means the Proof of

8   Claim and Release form for submitting a claim, which, subject to approval of the

9   Court, shall be substantially in the form attached hereto as Exhibit A-2.  A Class

10  Member must complete and submit the Proof of Claim and Release should that Class

11  Member seek to share in a distribution of the Net Settlement Fund.

12      1.37   "PSLRA" means the Private Securities Litigation Reform Act of 1995,

13  15 U.S.C. § 78u-4 *et seq.*, as amended.

14      1.38   "Related Persons" means (i) with respect to Defendants, Defendants'

15  Counsel, and the D&O Insurers, each of their respective current and former

16  employers, officers, directors, employees, agents, servants, representatives, parents,

17  affiliates, subsidiaries, successors, predecessors, assigns, assignees, advisors,

18  attorneys, underwriters, and insurers, and each of their respective heirs, executors,

19  administrators, successors and assigns; and (ii) with respect to the Individual

20  Defendants, their respective Immediate Family members, heirs, successors,

21  executors, estates, administrators, attorneys, agents, accountants, insurers or

22  reinsurers, personal representatives, trusts, community property, or any other entity

23  in which any of them has a controlling interest, and as to such entities or trusts, each

24  and all of their predecessors, successors, past, present or future parents, subsidiaries,

25  affiliates, and each of their respective past or present officers, directors,

26  shareholders, agents, partners, principals, members, employees, attorneys, advisors,

27  trustees, auditors and accountants, insurers and reinsurers.

28

1       1.39  "Released Claims" means all claims (including, but not limited to,

2   Unknown Claims), demands, losses, rights, and causes of action of any nature and

3   description, that have been or could have been asserted in the Action or could in the

4   future be asserted in any forum, whether foreign or domestic, whether arising under

5   federal, state, common, or foreign law, which arise out of or relate to, directly or

6   indirectly: (i) any of the allegations, transactions, facts, matters, occurrences,

7   representations or omissions involved, set forth, or referred to, in the Complaints;

8   and (ii) the purchase, acquisition, holding, sale, or disposition of Snap common stock

9   or options by any member of the Settlement Class during the Settlement Class

10  Period.  This release does not cover, include, or release (i) any claims relating to the

11  enforcement of the Settlement, or (ii) any Excluded Claims.

12      1.40  "Released Defendants Parties" means each and all Defendants,

13  Defendants' Counsel, the D&O Insurers, and their respective Related Persons.

14      1.41  "Released Defendants' Claims" means all claims (including, but not

15  limited to, Unknown Claims), demands, losses, rights, and causes of action of any

16  nature whatsoever, which arise out or relate in any way to the institution,

17  prosecution, assertion, settlement, or resolution of the Action.  This release does not

18  cover, include, or release (i) any claims relating to the enforcement of the Settlement,

19  or (ii) any Excluded Claims.

20      1.42  "Released Parties" means the Released Defendants Parties and the

21  Released Plaintiffs Parties.

22      1.43  "Released Plaintiffs Parties" means: Lead Plaintiff, all other named

23  plaintiffs in the Action, Plaintiff's Counsel, and all other Settlement Class Members,

24  as well as each of their respective current and former employers, officers, directors,

25  employees, agents, servants, representatives, parents, affiliates, subsidiaries,

26  successors, predecessors, assigns, assignees, advisors, attorneys, underwriters, and

27  insurers, and each of their respective heirs, executors, administrators, successors and

28  assigns.

1.44   "Settlement" means the resolution of the Action in accordance with the terms and provisions of this Stipulation.

1.45   "Settlement Amount" means the principal amount of sixty-five million dollars ($65,000,000.00), to be paid pursuant to ¶2.1 of this Stipulation.

1.46   "Settlement Fund" means the Settlement Amount, together with all interest and income earned thereon.

1.47   "Settlement Hearing" or "Final Approval Hearing" means the hearing to be held by the Court to determine whether: (i) the Settlement is fair, reasonable, and adequate and should be approved; (ii) the Plan of Allocation is fair, reasonable, and adequate and should be approved; and (iii) Lead Counsel's request for an award of attorneys' fees and expenses and an award to Lead Plaintiff should be approved.

1.48   "Settling Parties" means Defendants and Lead Plaintiff, on behalf of themselves and Class Members.

1.49   "Snap" or the "Company" means Snap Inc.

1.50   "Snap Securities" means Snap common stock, call options, and put options.

1.51   "Stipulation" or "Settlement Agreement" means this Stipulation of Settlement, including the recitals and exhibits hereto (the "Exhibits"), each of which is incorporated by reference as though set forth in the Stipulation itself.

1.52   "Summary Notice" means the summary notice for publication, which shall be substantially in the form attached hereto as Exhibit A-3.

1.53   "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs relating to filing (or failing to file) the returns, *see* ¶2.9.

1.54  "Taxes" means all taxes of any kind (including any estimated taxes, interest, or penalties) arising with respect to any income earned by the Settlement Fund.

1.55  "Unknown Claims" means any and all Released Claims that Lead Plaintiff or any other Class Members do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendants Parties, and any and all Released Defendants' Claims that any Defendant does not know or do not suspect to exist in his, her, or its favor at the time of the release of the Released Plaintiffs Parties, which if known by him, her, or it, might have affected his, her, or its decision(s) to enter into this Settlement, execute this Stipulation, and agree to all the releases set forth herein, or might have affected his, her, or its decision(s) not to object to this Settlement or not exclude himself, herself, or itself from the Class. Unknown Claims include, without limitation, those claims in which some or all of the facts composing the claim may be unsuspected, undisclosed, concealed, or hidden.  With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and Class Members (as regards the Released Claims) and the Defendants (as regards the Released Defendants' Claims) shall expressly waive and relinquish, and each Class Member shall be deemed to have and by operation of law and of the Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by California Civil Code §1542, or any law of any state or territory of the United States, or principle of common law or of international or foreign law, which is similar, comparable, or equivalent to Cal. Civ. Code §1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

1    The Released Parties may hereafter discover facts in addition to or different from
2    those which he, she, or it now knows or believes to be true with respect to the subject
3    matter of the Released Claims or Released Defendants' Claims, but such person or
4    entity shall expressly settle and release, and each member of the Class, upon the
5    Effective Date, shall be deemed to have, and by operation of the Judgment shall
6    have, fully, finally, and forever settled and released any and all Released Claims and
7    Released Defendants' Claims, known or unknown, suspected or unsuspected,
8    contingent or non- contingent, whether or not concealed or hidden, which now exist,
9    or heretofore have existed, upon any theory of law or equity now existing or coming
10    into existence in the future, including, but not limited to, conduct which is negligent,
11    intentional, with or without malice, or a breach of any duty, law or rule, without
12    regard to the subsequent discovery or existence of such different or additional facts.
13    Lead Plaintiff and Defendants acknowledge and the members of the Class by
14    operation of the Judgment shall be deemed to have acknowledged that the waivers
15    contained in this paragraph, and the inclusion of "Unknown Claims" in the definition
16    of Released Claims and Released Defendants' Claims, were separately bargained for
17    and are material elements of the Settlement.

18    **2.    The Settlement**

19         **a.    The Settlement Fund**

20    2.1    The Settlement Amount shall be paid as follows:  Snap shall cause to
21    be deposited sixty-five million dollars ($65,000,000.00) on behalf of all Defendants
22    into an interest-bearing escrow account controlled by Lead Counsel by wire
23    transfer(s) or check(s) within thirty (30) business days after the later of: (i)
24    preliminary approval of the Settlement; and (ii) the provision to Defendants'
25    Counsel of all information necessary to effectuate a transfer of funds, including, but
26    not limited to, complete mailing instructions or wire instructions, payment address,
27    the bank name and ABA routing number, SWIFT code, account name and number,
28    a signed W-9 for the current fiscal year reflecting the taxpayer identification number

for the Settlement Fund and the name and phone number of a contact person for oral verification of payment instructions. These funds, together with any interest and income earned thereon once transferred, shall constitute the Settlement Fund. Such amount is paid as consideration for full and complete settlement of all the Released Claims. Other than the obligation of Snap to cause to be paid the Settlement Amount into the Settlement Fund, the Defendants shall have no obligation to make any other payment into the Settlement Fund pursuant to this Stipulation and shall have no responsibility in any respect for the Settlement Fund after causing to be paid the Settlement Amount into the Settlement Fund.

2.2    If the entire Settlement Amount is not deposited into the Escrow Account in accordance with ¶2.1, Lead Counsel may terminate the Settlement, but only if: (i) Defendants' Counsel have received from Lead Counsel written notice of Lead Counsel's intention to terminate the Settlement; and (ii) the Settlement Amount is not transferred to the Escrow Account within five (5) business days after Defendants' Counsel received such written notice from Lead Counsel.

2.3    The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no Released Defendants Party, or any person or entity who or which paid any portion of the Settlement Amount, shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of recognized claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

**b.    The Escrow Agent and Notice and Administration Costs**

2.4    The Escrow Agent shall invest the Settlement Fund deposited pursuant to ¶2.1 hereof in instruments, funds, or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, or in money funds holding only instruments backed by the full

faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All risks related to the investment of the Settlement Fund shall be borne by the Escrow Agent, and the Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the investment decisions or the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.5    The Escrow Agent shall not disburse the Settlement Fund except: (a) as provided in this Stipulation; (b) by an order of the Court; or (c) with the written agreement of counsel for all of the Settling Parties.

2.6    Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as are provided for under the terms of this Stipulation.

2.7    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.8    Notwithstanding that the Effective Date of the Settlement has not yet occurred, the Escrow Agent may, at any time after entry of the Preliminary Approval Order and without further approval from Defendants or the Court, disburse at the direction of Lead Counsel up to $300,000 from the Settlement Fund prior to the Effective Date to pay Notice and Administration Costs. After the Effective Date, additional amounts, up to a total of $300,000, may be transferred from the Settlement Fund to pay for any necessary additional Notice and Administration Costs without further order of the Court.  Such Notice and Administration Costs include, without limitation: the cost of identifying and locating members of the Class, emailing and mailing the Postcard Notice and publishing notice (such amount shall include,

without limitation, the actual costs of publication, printing and mailing the Postcard Notice, and reimbursement to nominee owners of the reasonable costs of identifying and forwarding notice to their beneficial owners), soliciting Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proofs of Claim and Release, and paying bank fees and costs, if any, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims.  The Released Defendants Parties shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Costs, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, the Settlement Amount, plus accrued interest at the same rate earned by the escrow account, shall be returned to the appropriate sources of the funds pursuant to Defendants' instructions, within thirty (30) business days, less any reasonable notice or administrative costs actually paid or incurred.

### c.    Taxes

2.9    (a)    The Settling Parties agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1 and that Lead Counsel, as administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund.  Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund.  The Released Defendants Parties shall not have any liability or responsibility for any such Taxes.  Upon written request, Defendants will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e).

(b)    All Taxes and Tax Expenses shall be paid out of the Settlement Fund and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without further order of the Court.  Any tax returns prepared for the Settlement Fund shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  The Released Defendants Parties shall have no responsibility or liability for any Taxes and Tax Expenses, or the acts or omissions of the Claims Administrator, the Escrow Agent, Lead Counsel, or their agents with respect to the payment of Taxes or Tax Expenses, as described herein, or the filing of any tax returns or other documents in connection with the Settlement Fund.

**3.    Preliminary Approval Order and Settlement Hearing**

3.1    Solely for the purposes of the Settlement and for no other purpose, the Parties stipulate and agree to: (i) certification of the Action as a class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class; (ii) certification of Lead Plaintiff as class representative for the Class; and (iii) appointment of Lead Counsel as class counsel for the Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

3.2    Lead Counsel shall submit this Stipulation together with its exhibits (the "Exhibits") to the Court and shall move for entry of an order (the "Preliminary Approval Order"), which Defendants shall not oppose, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation and approval for the emailing (and mailing where no email is available) of the Postcard Notice and publication of the Summary Notice, in the forms of Exhibits A-4 and A-3, respectively, attached hereto.  The Postcard Notice shall direct Class Members to the Settlement Website to access the Notice, substantially in the form contained in Exhibit A-1 attached hereto, which shall contain the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the

1  Fee and Expense Application (defined in ¶6.1 below), and the date of the Settlement

2  Hearing.

3      3.3    It shall be solely Lead Counsel's responsibility to disseminate the

4  Postcard Notice, Notice, and Summary Notice to the Class in accordance with this

5  Stipulation and as ordered by the Court.   Members of the Class shall have no

6  recourse as to the Released Parties with respect to any claims they may have that

7  arise from any failure of the notice process.

8      3.4    No later than ten (10) calendar days following the filing of this

9  Stipulation with the Court, Defendants shall serve the notice required under the Class

10  Action Fairness Act, 28 U.S.C. §1715, *et seq*. ("CAFA") on the appropriate Federal

11  and State officials and shall provide Lead Counsel with a copy of such notice within

12  five (5) calendar days of such service.   Defendants are solely responsible for the

13  costs of the CAFA notice and administering the CAFA notice.   The Settling Parties

14  agree that any delay by Defendants in timely providing the CAFA notice shall not

15  provide grounds for delay of the Settlement Hearing or entry of the Judgment.   Lead

16  Counsel shall request that, after notice is given to the Class, and not earlier than

17  ninety (90) calendar days after the later of the dates on which the appropriate Federal

18  official and the appropriate State officials are provided with notice pursuant to

19  CAFA, the Court hold the Settlement Hearing and approve the Settlement of the

20  Action as set forth herein.   At or after the Settlement Hearing, Lead Counsel also

21  shall request that the Court approve the proposed Plan of Allocation and the Fee and

22  Expense Application.

23      **4.    Releases**

24      4.1    Upon the Effective Date, Lead Plaintiff and each of the Class Members

25  (who have not validly opted out of the Class), on behalf of themselves and their

26  respective former and present officers, directors, employees, agents, affiliates,

27  parents, subsidiaries, insurers, reinsurers, heirs, executors, administrators,

28  predecessors, successors, assigns, representatives, attorneys, and agents in their

capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever released, relinquished, waived, and discharged against the Released Defendants Parties (whether or not such Class Members execute and deliver the Proof of Claim and Release) any and all Released Claims (including, without limitation, Unknown Claims). This release shall not apply to any Excluded Claim.

4.2    Upon the Effective Date, Lead Plaintiff and each of the Class Members (who have not validly opted out of the Class), on behalf of themselves and their respective former and present officers, directors, employees, agents, affiliates, parents, subsidiaries, insurers, reinsurers, heirs, executors, administrators, predecessors, successors, assigns, representatives, attorneys, and agents in their capacity as such shall be permanently barred and enjoined from the institution, maintenance, prosecution, or enforcement against any Released Defendants Parties, in any local, state, or federal court, in the court of any foreign jurisdiction, or in any arbitral forum (whether foreign or domestic, and regardless of the procedural rules or substantive law applied by the arbitral forum), of any and all Released Claims (including, without limitation, Unknown Claims).

4.3    The Proof of Claim and Release to be executed by Class Members shall release all Released Claims against the Released Defendants Parties and shall be substantially in the form contained in Exhibit A-2 attached hereto; provided, however, that the failure of a Class Member to submit such Proof of Claim and Release shall have no effect on the provisions of the foregoing ¶¶4.1 and 4.2, inclusive, which shall remain in full force and effect as to each of the Class Members (who have not validly opted out of the Class) irrespective of any lack of submission of a Proof of Claim and Release.

4.4    Upon the Effective Date, each of the Released Defendants Parties shall have, fully, finally, and forever released, relinquished, and discharged the Released Plaintiffs Parties, including Lead Counsel, from all Released Defendants' Claims

(including, without limitation, Unknown Claims); provided, for the avoidance of doubt, that such release, relinquishment, and discharge shall extend to Class Members solely in their capacity as members of the Class and shall not operate to release claims, counterclaims, or waive any other defenses on the part of the Defendants or Released Defendants Parties arising against them in any other capacity.  This release shall not apply to any Excluded Claim.

**5.    Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

5.1    The Claims Administrator, subject to such supervision and direction of the Court as may be necessary or as circumstances may require, shall provide notice of the Settlement to the Class, shall administer and calculate the claims submitted by Class Members, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

5.2    Within ten (10) business days after the Court enters the Preliminary Approval Order, Snap shall use reasonable efforts to: (i) locate record shareholder lists of Snap shareholders during the Class Period to the extent such lists exist;(ii) identify and provide contact information for Snap's transfer agent(s) during the Class Period; and (iii) facilitate access to such information for Lead Counsel or the Claims Administrator, without any charge to Lead Plaintiff or the Class, for the purpose of providing notice of the proposed Settlement to the Class.  The Parties shall determine an appropriate electronic format for provision of this information.

5.3    In accordance with the schedule set forth in the Preliminary Approval Order, Lead Counsel will cause the Postcard Notice, substantially in the form of Exhibit A-4 attached hereto, to be emailed or mailed (in those instances where no email address is available) by the Claims Administrator to all shareholders of record, or their nominees.  The Notice and Proof of Claim and Release shall also be posted on the Settlement Website.  In accordance with the schedule set forth in the Preliminary Approval Order, the Summary Notice, substantially in the form of

Exhibit A-3 attached hereto, will also be published once in the national edition of *The Wall Street Journal* and once over a national newswire service.  The cost of providing such notice shall be paid out of the Settlement Fund.

5.4    The Settlement Fund shall be applied as follows:

(a)    to pay all Notice and Administration Costs;

(b)    to pay all Taxes and Tax Expenses;

(c)    to pay Lead Counsel's attorneys' fees and expenses, plus interest (the "Fee and Expense Award"), and to pay an award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4), if and to the extent allowed by the Court; and

(d)    to distribute the Net Settlement Fund to Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

5.5    Upon the Effective Date and thereafter, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with ¶¶5.6-5.12 below.

5.6    Each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto, received by no later than ninety (90) calendar days after the Notice Date (as defined in Exhibit A attached hereto), or such other time as may be set by the Court (the "Bar Date"), signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release.

5.7    Except as provided herein or otherwise ordered by the Court, all Class Members who fail to submit a Proof of Claim and Release by the Bar Date, or such other period as may be ordered by the Court, or who submit a Proof of Claim and Release that is rejected, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will in all other

respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims for processing so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator, or any Class Member by reason of the exercise or non exercise of such discretion.

5.8    Each Proof of Claim and Release shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to ¶5.10 below.

5.9    Proof of Claim and Release forms that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim and Release in whole or in part, the Claims Administrator shall communicate with the Claimant in writing to give the Claimant the chance to remedy any curable deficiencies in the Proof of Claim and Release submitted. The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of ¶5.10 below.

5.10    If any Claimant whose timely Claim has been rejected in whole or in part for a curable deficiency desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶5.9 above, or a lesser period of time if the Claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's

grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the Claimant's request for review to the Court.

5.11    The Claims Administrator shall calculate the Claims of Authorized Claimants in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. Following the Effective Date, the Claims Administrator shall send to each Authorized Claimant his, her, or its *pro rata* share of the Net Settlement Fund, as long as the Authorized Claimant will receive at least $10.00.

5.12    The Net Settlement Fund is non-reversionary and Defendants shall not have a reversionary interest in the Net Settlement Fund. If there is any balance remaining in the Net Settlement Fund after a reasonable amount of time following the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants who negotiated the checks sent to them in the initial distribution and who would receive at least $10.00 in an equitable and economical fashion. These reallocations shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance shall then be donated to the Bluhm Legal Clinic Complex Civil Litigation and Investor Protection Center at Northwestern Pritzker School of Law, a nonprofit charitable organization, or as ordered by the Court.

5.13    The Released Defendants Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the processing, review, determination, or calculation of any Claims, the distribution of the Net Settlement Fund, the Plan of Allocation, the payment or withholding of Taxes, or any losses incurred in connection therewith. No Person shall have any claim of any kind against the Defendants, Released Defendants Parties, or counsel for Defendants with respect to the matters set forth in ¶¶5.1-5.12 hereof; and the members of the Class, Lead Plaintiff, and Lead Counsel release the Defendants and Released Defendants Parties

from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

5.14   It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other orders entered pursuant to this Stipulation.  Class Members and Defendants shall be bound by the terms of this Stipulation, irrespective of whether the Court disapproves or modifies the Plan of Allocation.

5.15   No Person shall have any claim against Lead Plaintiff, the Class, Lead Counsel, or the Claims Administrator based on determinations or distributions made substantially in accordance with the Settlement, this Stipulation, and the Plan of Allocation, or otherwise as further ordered by the Court.

**6.     Lead Counsel's Attorneys' Fees and Expenses**

6.1     Lead Counsel may submit an application or applications (the "Fee and Expense Application") for: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Action; plus (c) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court.  Any and all such fees, expenses, and costs awarded by the Court shall be payable solely out of the Settlement Fund.  In addition, Lead Plaintiff may submit an application for award from the Settlement Fund pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.

6.2     The attorneys' fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately upon entry of the Court's order awarding such fees and expenses.  This provision shall apply notwithstanding timely objection to, potential for appeal from, or collateral attack on, the Settlement or the award of fees and expenses.  Any such awards shall be paid solely by the Settlement Fund.  In the event that the Judgment or the order awarding such fees and expenses paid to Lead Counsel pursuant to ¶6.1 and this ¶6.2 is reversed or modified, or if the Settlement is cancelled or terminated for any reason, then Lead Counsel shall, in an amount consistent with such reversal, modification, termination, or cancellation, refund such fees or expenses to the Settlement Fund pursuant to ¶2.8, plus the interest earned thereon, within thirty (30) business days from receiving notice from Defendants' Counsel or from a court of competent jurisdiction.

6.3     The procedure for and the allowance or disallowance by the Court of the Fee and Expense Application, with all amounts to be paid out of the Settlement Fund, are not part of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Action.

6.4     Released Defendants Parties shall not have any responsibility for any payment of attorneys' fees and expenses to Lead Counsel or any amount to Lead Plaintiff apart from payment of the Settlement Amount pursuant to ¶2.1.

**7.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1     The Effective Date of this Stipulation shall be conditioned on the occurrence of all of the following events:

1          (a)     execution of this Stipulation and such other documents as may

2 be required to obtain final Court approval of this Stipulation in a form satisfactory

3 to the Settling Parties;

4          (b)     the Settlement Amount has been deposited into the Escrow

5 Account;

6          (c)     the Court has entered the Preliminary Approval Order, or an

7 order substantially in the form of Exhibit A hereto, as required by ¶3.2 hereof;

8          (d)     Defendants have not exercised their option to terminate this

9 Stipulation pursuant to ¶7.3 hereof;

10          (e)     the Court has entered the Judgment that, *inter alia*, dismisses

11 with prejudice the Action, as to the Lead Plaintiff and other Class Members, and as

12 against each of the Defendants, as set forth above; and

13          (f)     the Judgment has become Final, as defined in ¶1.19 hereof.

14     7.2     Upon the occurrence of all of the events referenced in ¶7.1 hereof, any

15 and all remaining interest or right to the Settlement Fund, if any, of Defendants or

16 any persons who contributed to the Settlement Fund shall be absolutely and forever

17 extinguished.  If all of the conditions specified in ¶7.1 hereof are not met, then this

18 Stipulation shall be canceled and terminated subject to ¶7.4 hereof unless Lead

19 Counsel and Defendants' Counsel mutually agree in writing to proceed with the

20 Settlement.

21     7.3     Snap shall have sole and exclusive discretion to terminate the

22 Settlement in the event that Persons who otherwise would be members of the Class

23 timely choose to exclude themselves from the Class in accordance with the

24 provisions of the Preliminary Approval Order and Notice given pursuant thereto

25 purchased more than a certain number of shares of Snap common stock ("Opt-Out

26 Threshold"), as set forth in a separate agreement (the "Supplemental Agreement")

27 executed between Lead Counsel and Defendants' Counsel, which is incorporated by

28 reference into this Stipulation.  The Parties shall not file the Supplemental

Agreement with the Court unless instructed to do so by the Court.  The Opt-Out Threshold may be disclosed to the Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the Opt-Out Threshold as confidential.

7.4    Unless otherwise ordered by the Court, in the event this Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within thirty (30) business days after written notification of such event is sent by Defendants' Counsel to the Escrow Agent, the Settlement Fund (including accrued interest at the same rate earned by the escrow account), less any reasonable notice or administrative costs actually paid or incurred, shall be refunded pursuant to written instructions from Defendants' Counsel within thirty (30) business days.  At the request of Defendants' Counsel, the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any expenses incurred in connection with such application(s) for refund, at the written direction of Defendants' Counsel to the party, parties, or insurers that paid the Settlement Amount.

7.5    In the event that this Stipulation is not approved by the Court or the Settlement set forth in this Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Action as of September 11, 2025.  In such event, the terms and provisions of this Stipulation, with the exception of ¶¶2.7-2.9, 7.4, 8.1, 9.3, 9.5-9.6 (and ¶1 to the extent referenced therein) hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Action or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*, and the Settling Parties shall be deemed to return to their status as of September 11, 2025.  No order of the Court or modification or reversal on appeal of any such

order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees and expenses, interest, or other payment awarded by the Court to Lead Counsel shall constitute grounds for cancellation or termination of this Stipulation.

## 8.    No Admission of Wrongdoing

8.1    Neither the Settlement, this Stipulation (whether or not consummated), including the Exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation and the Settlement, nor any proceedings, communications, drafts, documents or agreements taken pursuant to or in connection with this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)    shall be offered or received against any Released Defendants Party as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Released Defendants Party of the truth of any allegations by Lead Plaintiff or any member of the Class or the validity of any claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any other litigation, including, but not limited to, litigation of the Released Claims, or of any liability, negligence, fault, or wrongdoing of any kind of any of the Released Defendants Party or in any way referred to for any other reason as against any of the Released Defendants Party, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)    shall be offered or received against or to the prejudice of any Released Defendants Party as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Released Defendants Party, or against Lead

Plaintiff or any member of the Class as evidence of any infirmity in the claims of Lead Plaintiff and the Class;

(c)    shall be offered or received against any Released Defendants Party as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Stipulation, in any other civil, criminal, or administrative action or proceeding; provided, however, that if this Stipulation is approved by the Court, Defendants and the Released Defendants Parties may refer to it to effectuate the release granted them hereunder; or

(d)    shall be construed against Defendants, Lead Plaintiff, or the Class as evidence of a presumption, concession, or admission that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial or in any proceeding other than this Settlement.

**9.    Miscellaneous Provisions**

9.1    The Settling Parties (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation expeditiously.

9.2    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action.  The Settlement shall not be deemed an admission by any Settling Party or any of the Released Parties as to the merits of any claim or defense.  The Settling Parties and their counsel agree that they shall not assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of the Action, and the Final Judgment shall contain a finding that all Settling Parties and their counsel complied with the requirements of Rule 11 with respect to the institution, prosecution, defense, and resolution of the Action.  The Settling Parties

agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith at arm's length by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

9.3     Neither this Stipulation, nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Defendants Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Defendants Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal; or (c) is or may be deemed to be or may be used as an admission or evidence that any claims asserted by Lead Plaintiff were not valid or that the amount recoverable was not greater than the Settlement Amount, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

9.4     The Released Defendants Parties may file this Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.5     Whether or not this Stipulation is approved by the Court and whether or not this Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed, and proceedings in connection with this Stipulation confidential.

9.6    All agreements made and orders entered during the course of the Action relating to the confidentiality of documents and information shall survive this Stipulation.

9.7    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.8    This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.9    No waiver of any term or provision of this Stipulation, or of any breach or default hereof or hereunder, shall be valid or effective unless in writing and signed by or on behalf of all Settling Parties or their respective successors-in-interest.  No waiver of any term or provision of this Stipulation, or of any breach or default hereof or hereunder, shall be construed as a waiver of the same or any other term or provision or of any previous or subsequent breach thereof.

9.10    This Stipulation and the Exhibits attached hereto (together with the Supplemental Agreement referred to in ¶7.3) constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any Settling Party concerning this Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein (or, as between Defendants, in any separate agreement(s) between them), each Settling Party shall bear its own costs.

9.11    The Settlement is not conditioned upon the settlement or approval of settlement of any derivative lawsuits or other lawsuits.  Nor shall the Settlement be conditional upon the obtaining of any judicial approval of any releases between or among Defendants and/or any third parties.

9.12    This Stipulation shall be construed and interpreted to effectuate the intent of the Settling Parties, which is to resolve completely those claims and disputes, including in the Action, and as more fully described herein.  If any

provision of this Stipulation shall be determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner that would permit its enforcement, but in no event shall such provision affect, impair, or invalidate any other provision hereof.

9.13    Neither the Class Members nor Defendants shall be bound by this Stipulation if the Court modifies material terms thereof; provided, however, that it shall not be a basis for Class Members to terminate the Settlement if the Court modifies any proposed Plan of Allocation or criteria for allocation of the Net Settlement Fund amongst Authorized Claimants, or the Plan of Allocation is modified on appeal.  Nor shall it be a basis to terminate this Stipulation if the Court disapproves of or modifies the terms of this Stipulation with respect to attorneys' fees or expenses or the distribution of the Net Settlement Fund.  Notwithstanding any such modification of the terms or Plan of Allocation or this Stipulation with respect to attorneys' fees or expenses, Defendants and Defendants' insurers/reinsurers shall be entitled to all benefits of the Settlement and shall not, under any circumstances, be called upon to contribute additional funds in addition to the Settlement Fund.

9.14    Lead Counsel, on behalf of the Class, is expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to this Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Class which it deems appropriate.

9.15    Each counsel or other Person executing this Stipulation or any of its Exhibits on behalf of any Settling Party hereby warrants that such Person has the full authority to do so.

9.16    If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, facsimile, or email transmission, with

confirmation of receipt.  Any written notice required pursuant to or in connection with this Stipulation shall be addressed to counsel as follows:

If to Lead Plaintiff or to Lead Counsel:

> Joseph E. White, III
> Saxena White P.A.
> 7777 Glades Road, Suite 300
> Boca Raton, FL 33434

If to Defendants or to Defendants' Counsel:

> Audra J. Soloway
> Paul, Weiss, Rifkind, Wharton & Garrison LLP
> 1285 Avenue of the Americas
> New York, NY  10019

9.17  This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.

9.18  This Stipulation shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the Settling Parties hereto.

9.19  The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

9.20  Pending approval of the Court of this Stipulation and its Exhibits, all proceedings in this Action shall be stayed, and all members of the Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Defendants Parties.

9.21  This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California, without giving effect to that State's choice-of-law principles.

9.22   This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

9.23   Nothing in this Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

9.24   Unless otherwise provided, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

IN WITNESS WHEREOF, the Settling Parties have caused this Stipulation to be executed, by their duly authorized attorneys, on October 27, 2025.

**SAXENA WHITE, P.A.**

/s/

Maya Saxena (*pro hac vice*)
Joseph E. White, III
Lester R. Hooker (SBN 241590)
Dianne M. Pitre (SBN 286199)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
E-mail: msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com
dpitre@saxenawhite.com

**SAXENA WHITE P.A.**
Steven B. Singer (*pro hac vice*)
Sara DiLeo (*pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
E-mail: ssinger@saxenawhite.com
sdileo@saxenawhite.com

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
E-mail: dkaplan@saxenawhite.com

*Lead Counsel for Lead Plaintiff and the Class*

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
John L. Littrell (SBN 221601)
jlittrell@bklwlaw.com
Michael R. Williams (SBN 192222)
mwilliams@bklwlaw.com
360 E. 2nd Street, Suite 625
Los Angeles, CA 90012
Telephone: (213) 528-3400
Facsimile: (949) 369-3701

*Liaison Counsel for Lead Plaintiff and the Class*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/
Daniel J. Kramer (*pro hac vice*)
Audra J. Soloway (*pro hac vice*)
Kristina A. Bunting (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email:        dkramer@paulweiss.com
Email:        asoloway@paulweiss.com
Email:        kbunting@paulweiss.com

**BIRD, MARELLA, RHOW, LINCENBERG, DROOKS, & NESSIM, LLP**

Ekwan E. Rhow (SBN 174604)
Darren L. Patrick (SBN 310727)
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561
Tel:    (310) 201-2100
Fax:    (310) 201-2110
Email:        erhow@birdmarella.com
Email:        dpatrick@birdmarella.com

*Attorneys for Defendants*